[Civ. No. 3347.    Second Appellate District, Division One.—December 15, 1920.]

## WILLIAM GOATMAN et al., Respondents, v. O. B. FULLER et al., Appellants.

[1] LEASES—ACTION TO DETERMINE OWNERSHIP—EXECUTION AS SECURITY — EVIDENCE — PRESUMPTION — REBUTTAL. — In an action brought to have it decreed that the plaintiffs are the owners of a certain written lease which was executed by the lessor to one of the defendants and by him assigned to his codefendant, the presumption is that the instrument is what it purports on its face to be, a lease to the lessee named therein, and to overcome this presumption and establish that the lease was executed in favor of said lessee as security only for an indebtedness due from plaintiffs' assignor, the evidence must be clear, unequivocal, and convincing; but this rule means no more than that the evidence in support of the findings, if believed by the trial court, must be sufficient to furnish clear, unequivocal, and convincing proof of the facts found.

[2] ID.—EXECUTION OF LEASE AS SECURITY—FINDING—EVIDENCE.—In this action brought to have it decreed that the plaintiffs were the owners of a certain written lease which was executed by the lessor to one of the defendants and by him assigned to his codefendant, and for an accounting of the rents, issues, and profits thereof, the evidence was sufficient to support the findings of the trial court to the effect that at the time of the execution of said lease plaintiffs' assignor was indebted to said codefendant and that the lease was executed to the lessee named therein as security for that indebtedness.

[3] ID.—TO WHOM PAYMENTS CHARGED—BEST EVIDENCE.—In such an action said codefendant company's books are the best evidence as to whom certain payments made by it to plaintiffs' assignor were charged.

[4] PLEADING — DENIAL OF LEAVE TO AMEND ANSWER — ABSENCE OF ERROR.—It was not an abuse of discretion to deny the defendants'

motion, made at the close of the evidence, to amend their answer by stating a certain denial, where the case was tried upon the theory that such denial had been made, and such denial did not correspond with the proof.

[5] FINDINGS—PROBATIVE FACTS IN ANSWER.—The trial court is not required to find on probative facts pleaded in an answer and which merely bear upon one of the principal issues tried and determined by the court.

APPEAL from a judgment of the Superior Court of Orange County. R. Y. Williams, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. T. Clotfelter and E. T. Lucey for Appellants.

Anderson &. Anderson for Respondents.

CONREY, P. J.—Respondents, as assignees of one Peter Karales, brought this action to have it decreed that the plaintiffs are the owners of a certain lease of 320 acres of land, which was executed by Artesian Land Company to O. B. Fuller and thereafter assigned by him to C. H. & O. B. Fuller Company, hereinafter called the Fuller Company; and for an accounting of the rents, issues, and profits thereof. An interlocutory decree was entered whereby it was adjudged that the plaintiffs are the owners of said lease. It was further ordered that the lease be assigned to the plaintiffs; that the plaintiffs forthwith be given possession of the leased premises; that the subleases be assigned to the plaintiffs, and that the defendants O. B. Fuller and the Fuller Company account to the plaintiffs for the rents, issues, and profits of said Karales lease. From this judgment the defendants appeal.

Among other things, the court found that on the twenty-fourth day of September, 1917, Karales was engaged in the business of leasing, farming, and subletting farming lands and properties in the county of Orange, and in the course of said business, which he had carried on and conducted for some time prior thereto, had been given financial aid and assistance by the defendants Fuller Company and Pioneer Ranch Company, and had set over and assigned

to said defendants various and sundry leasehold interests as security for his obligations to them; that on the twenty-fourth day of September, 1917, Karales had negotiated and secured the promise of a lease from the Artesian Land Company upon the terms and conditions of the lease here in question; that on said twenty-fourth day of September, 1917, when the said Artesian Land Company was about to make and execute said lease to Karales, the defendant O. B. Fuller, acting as the agent for and on behalf of the defendant Fuller Company, requested and demanded that said lease be made and executed to him, the said O. B. Fuller, and in his name, as further security for the moneys then owing and thereafter to become due from Karales to said Fuller Company; that thereupon Karales agreed to join O. B. Fuller in said request and demand; that thereupon and pursuant to said request and demand, and solely by reason thereof and for the said purposes stated and not otherwise, the lessor made, executed, and delivered to the said O. B. Fuller, as the agent of and representing the Fuller Company, the said lease; that O. B. Fuller took said lease as such agent of the Fuller Company and in trust, with the knowledge, acquiescence, and consent of said company, for Karales and his successors and assigns, for the uses and purposes stated and not otherwise; that Fuller thereafter executed an instrument assigning to the Fuller Company all the right, title, and interest of Fuller in said lease; that the Fuller Company ever since has held and now holds the said lease in trust for Karales, his successors and assigns. Other facts are stated on which it was held that the plaintiffs are entitled to an accounting, and it was ordered that such accounting be made before the court.

Appellants contend that the evidence is insufficient to justify these findings; and especially that there is no evidence legally sufficient to sustain the finding that the lease was placed in the name of Fuller as further or any security for moneys owing from Karales to the Fuller Company. Incidental to this specification, appellants claim that the evidence is insufficient to establish the fact that on the twenty-fourth day of September, 1917, or at any time thereafter, Peter Karales was indebted to the defendants or any of them in any sum whatever. The

argument is that since there was no debt, therefore the testimony tending to show that the lease was made in the name of Fuller as security for a debt becomes legally insufficient to establish the conditions on which respondents rely as entitling them to the status of beneficiaries of a trust.

[1] On the law of the case, counsel for appellants first refer to various decisions defining the character of evidence required to establish an equity of the kind asserted by respondents in this case. The gist of the rule, as applied where it is sought to show that a deed in form is in fact a mortgage, is set forth by Mr. Pomeroy as follows: "The presumption, of course, arises that the instrument is what it purports on its face to be, an absolute conveyance of the land; to overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal, and convincing, for otherwise the natural presumption will prevail." (Pomeroy's Equity Jurisprudence, 3d ed., sec. 1196). We shall assume without further discussion that the rule is as thus declared, and that it is applicable to this case. However, it also must be remembered that where facts have been found by the trial court and the evidence is conflicting, the appellate court will not set aside those findings unless the evidence favorable to the findings is so slight that it becomes legally insufficient to establish the facts. In a case of the kind now under consideration, therefore, the rule that the evidence must be clear, unequivocal, and convincing means no more than that the evidence in support of the findings, if believed by the court, must have been sufficient to furnish clear, unequivocal, and convincing proof of the facts found. If it was thus sufficient, then the fact that there was other and conflicting evidence in which it appears that the court did not have confidence, cannot alter the legal effect of the evidence upon which the findings are based.

[2] Prior to a date on or about May 5, 1917, Peter Karales had been indebted to the Pioneer Ranch Company, a corporation whose officers were the same persons as the officers of the Fuller Company. O. B. Fuller was president of the Fuller Company and vice-president of the other. The indebtedness to the Ranch Company was,

among other things, secured by a chattel mortgage on certain cattle and by an assignment of a lease then held by Karales on a 935-acre tract owned by the Artesian Land Company and situated near the 320-acre tract described in the lease here involved. By foreclosure sale of the cattle, the indebtedness of Karales to the Pioneer Ranch Company was fully satisfied. A few days later, Peter Karales (together with his brother, who had some interest therein), assigned to the Fuller Company said 935-acre lease. Appellants claim that at that time, in consideration of this assignment and in connection with the Fuller Company's agreement to employ Peter Karales in its operation of said 935 acres, all indebtedness of Peter Karales to the Fuller Company was then and there satisfied and canceled. Peter Karales in his testimony denied the fact of such settlement agreement. The witnesses on the part of the appellants have not testified to any oral statements made between appellants and Peter Karales concerning this matter; nor to any written statement other than that Karales at said time executed the assignment of the 935-acre lease. At about that time the Fuller Company opened an account under the heading "Karales Ranch," in which items of receipts and expenditures were entered relating to the 935-acre tract, and in some instances relating to the 320-acre tract. This account also shows entries of $100 per month paid to Karales by the Fuller Company between May and October, 1917. During that period Karales was rendering services connected with all of these leased lands. Whether he was then merely an employee at a salary of $100 per month, or whether these were advancements made to Karales as a part of the transactions out of which his indebtedness arose, is one of the evidentiary questions of fact in dispute herein. Prior to September 24, 1917, Karales on his own account had negotiated with Artesian Land Company for a lease of said 320 acres. The lease had been made out in his name, but he had not been able to make the initial payment of $220, without which the Land Company would not deliver the lease. By application made to Mr. Ramsey, an officer of the Fuller Company, Karales had asked the Fuller Company to advance this money for him. Finding Mr. Ramsey unwilling to comply

with this request, Karales applied to the president, O. B. Fuller. Fuller and Karales went to W. H. Daum, manager of the Land Company, and had a conversation which resulted in the substitution of the name of O. B. Fuller for that of Peter Karales as lessee in the written lease which had been prepared. Thereafter Fuller paid the $220 and received the lease. Peter Karales testified that at that interview Mr. Fuller said to him: "Peter, I get everything in my name as collateral"; also, "I want to get this 320 acres in my name"; that "Daum turned around and asked me if that was so, if that was fair. I tell him all right; that is all there was." Mr. Daum testified that at that interview Mr. Fuller said he would like to have the lease in his name instead of Karales, as Mr. Karales would have to assign it anyway to protect funds that had been advanced. On cross-examination, Mr. Daum discriminated between the degrees of definiteness of his recollection of the facts, thus: "I would say I was positive that he said he would like to have it in his own name so far as the assignment was concerned; as to the balance it is the very best of my recollection." The cross-examination on this point went on at great length, but the witness still insisted that the facts were as stated, to the best of his recollection. On the other hand, Mr. Fuller's version of the conversation at Daum's office is as follows: "I took that lease in my own name. We went up to Mr. Daum's and I told him what we come for, and he asked me how I wanted the lease. I said I wanted it to myself, O. B. Fuller. He said to Peter, 'Is that all right?' Peter said, 'All right, go ahead and take it,' and I did so." Again: "Did you give him [Daum] any reason for it? A. I don't think so."

With respect to the indebtedness, Fuller testified that Peter Karales never owed him personally any money at any time, and that since May, 1917, Karales had not owed the Fuller Company any money.

About the beginning of December, 1918, pursuant to negotiations of Karales with the plaintiffs, Goatman and Gage, a transaction occurred whereby the 935-acre lease was assigned by the Fuller Company to the plaintiffs. Whether the consideration for that assignment was part of an ordinary sale made by the Fuller Company as

lease owner, or whether plaintiffs took over the assign-
ment by paying the amount of an existing debt of Karales
to the Fuller Company, is an additional question of fact
in the case. At about this time Karales and the witness
Brown called at the office of the Fuller Company. Karales
says that he asked Mr. Fuller for a statement; that Mr.
Fuller told the bookkeeper, Mr. Pearl, to let him have
it, and Pearl gave him a statement (a copy of which
was introduced in evidence). Brown testified that he
told Fuller he came in to talk about Peter Karales' account,
stating that possibly he could raise the money; that
Fuller asked for Mr. Ramsey to come into the room,
and that Fuller asked Mr. Ramsey, "How much does Peter
owe us?" that Ramsey stated the amount to be about
$9,200; that Fuller said: "Peter, I want my money
or else I will close you up." Some days later they
returned to the Fuller Company's office with Mr. Goatman
and Mr. Gage. At that time a statement of account from
the Fuller Company's books relating to these matters was
produced by the company, and Mr. Fuller wrote at the
top thereof, "Peter Karales Ranch Account with C. H.
& ·O. B. Fuller Company." It was in accordance with
the balance shown by that statement that the payment was
made in consideration of which the 935-acre lease was
assigned to the plaintiffs. Mr. Gage testified that this
heading on the statement was placed there by Mr. Fuller
at his request, because there was no heading on it. "Q.
You still thought it was a statement of Peter Karales'
indebtedness to C. H. & O. B. Fuller Company, didn't
you? A. If it is not somebody has misrepresented it to
us; Mr. Fuller said it was." However, on cross-exam-
ination this occurred: "Q. Neither Mr. Karales nor Mr.
O. B. Fuller told you at any time during these negotia-
tions that Peter Karales was indebted to the company,
did he? A. I don't know as he used the word you use,
Mr. Clotfelter, but they said the balance due them on
the Karales Ranch account was $10,200 and some odd
dollars." Mr. Goatman testified: "I asked Mr. Fuller
myself, sitting opposite across the table, if this money
was what Mr. Karales owed you people, and he said
yes. He went on to tell about Peter being a very fine
fellow, but he had something to say about his not manag-

ing just as he should do, etc., and that six months ago Peter had a credit of $1,700." Opposed to this we have Fuller's testimony that, when Karales and Brown asked him how much Peter Karales was owing the Fuller Company, "I told them Peter Karales owed nothing; the indebtedness was an indebtedness that was owed by the Peter Karales Ranch to the C. H. & O. B. Fuller Company." Fuller's explanation of the book account is that it was merely an expense account between the company and its leased property, showing expenditures and receipts on account thereof; and that in fixing the amount which they would accept for the assignment of the 935-acre lease, they establish that consideration at "the difference between the outgo and the income on the ranch," instead of fixing a lump sum as the price. The reason, he said, was "because I told Peter Karales that if he could sell out our interest in that thing and get our money out, that was all we wanted; we would be willing to lose our own time and all our work if we could get our money out."

Enough of the evidence has been stated here to test the question raised by appellants' contention that the evidence is insufficient to prove that any indebtedness of Karales to the Fuller Company existed on or about the twenty-fourth day of September, 1917. There had been such indebtedness. Was it settled and satisfied in May? If there was not an agreement whereby the transfer of the 935-acre lease to the Fuller Company was accepted by the creditor, and made by the debtor, as payment of the debt; if the 320-acre lease was made to Fuller and passed to the Fuller Company by reason of the facts declared in the testimony of Daum and of Karales; if the corroborative facts existed as set forth in the testimony of Karales, Brown, Goatman, and Gage, concerning their conversations with Fuller and others at the Fuller Company's office, and the statements of account then furnished; then, from those facts, the court might reasonably determine, as the ultimate fact, clearly, unequivocally, and convincingly established, that the 320-acre lease was placed in the name of Fuller as further security for the indebtedness of Karales to the Fuller Company. That those facts did exist may not be denied by this court; for there was evidence of them, which the trial court believed.

Appellants argue in support of five alleged errors in rulings at the trial. The first is of slight importance, and the ruling was correct. [3] The second relates to the overruling of an objection to a question asking Karales to whom certain payments· of wages were charged after the payments had been made by the Fuller Company; in response to which the witness answered, "Charged to me." The evidence called for was not competent, as the company's books were the best evidence. It is, however, scarcely possible to conceive that this item appreciably affected the result of the action. The third of these points is that the court erred in receiving in evidence a copy of the statement which had been furnished by the company's bookkeeper to Karales. The objection to this document was that it had ·been shown by the testimony of Mr. Pearl, the bookkeeper, that the document simply purported "to set forth the operating expenses and receipts in connection with some land and there is nothing on the face of the report to show that it relates to the land involved in this suit. Therefore no foundation has been laid." Taken in connection with the testimony above mentioned, in which the circumstances under which the statement was given are shown, we think that the objection was not well taken. [4] The fourth of these claimed errors was the denial of a motion made by appellants, at the close of the evidence, to amend their answer in one particular to correspond with the proof; that is to say, by stating that the defendants deny "that on the fourth day of December, 1918, or at any time since May, 1917, Peter Karales was indebted to either of the defendants." In view of the facts found by the court which heretofore we have held are sufficiently sustained by the evidence, this denial would not have corresponded. with the proof. Moreover, the nature of the evidence received indicates that the case was tried on the theory that such denial had been made. The court did not abuse its discretion in refusing to permit the amendment. [5] Finally, appellants claim that the court failed to find on a material allegation in the answer. This allegation was as follows: "The defendant O. B. Fuller alleges that, before he took said lease as before stated, the said Peter Karales informed him that unless he, the

said Karales, were furnished the money necessary to be paid as a condition precedent to the execution and delivery of the lease by the Artesian Land Company to him on the lands described in the complaint, he, the said Karales, would be wholly unable to get the lease, and that said defendants C. H. & O. B. Fuller Company and Pioneer Ranch Company had refused to let him, the said Karales, have said money, and that he was therefore compelled to drop the negotiations for such lease and to give up the idea of obtaining the same; that but for such information on the part of said Karales the said defendant O. B. Fuller would not have taken said lease.'' These averments of the answer include nothing else than probative facts bearing upon one of the principal issues tried and determined by the court, viz., whether or not O. B. Fuller took said lease on behalf of the Fuller Company and in trust for Karales. A specific finding upon the particulars stated in said paragraph of the answer was not necessary.

The judgment is affirmed.

Shaw, J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 13, 1921, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 10, 1921.

All the Justices concurred.