[Civ. No. 4536. First Appellate District, Division One.—April 24, 1924.]

## STANLEY DAVIE, Appellant, v. BOARD OF REGENTS, UNIVERSITY OF CALIFORNIA, et al., Respondents.

[1] MUNICIPAL CORPORATIONS — DOUBLE CHARACTER — LIABILITY FOR TORTS.—A municipal corporation has a double character—the one governmental, legislative or public; and the other proprietary or private—and, when acting in a private capacity, its liabilities arising out of either contract or tort are the same as those of natural persons or private corporations.

[2] UNIVERSITIES — MAINTENANCE OF INFIRMARY — GOVERNMENTAL FUNCTION—LIABILITY FOR TORTS.—The maintenance by the Board of Regents of the University of California of an infirmary for the sole purpose of safeguarding and protecting the health of the student body constitutes the exercise of a duty involving governmental functions in the highest degree, and is authorized by article IX, section 9, of the constitution; and, it being in no sense an organization for profit, the imposition upon each student of a small infirmary fee does not convert such governmental function into a proprietary one, so as to render the Board of Regents liable in damages for the negligent acts of its agents and servants in the conduct of the infirmary.

1. See 18 Cal. Jur. 1000, 1092, 1096; 19 R. C. L. 1106 et seq.

[3] Pleading—Demurrer—Grounds—Appeal.—Upon appeal from a judgment entered upon the failure of plaintiff to amend his complaint, after demurrer sustained, the appellate court is free to consider each ground of defendant's demurrer to the complaint, and if the demurrer is well taken on any ground properly specified in the demurrer the judgment of the trial court must be affirmed, even though the trial court may have deemed it sufficient in that respect and may in its order have declared it defective only in some particular in which the appellate court holds it to be good.

[4] Universities—Malpractice by Physician in Infirmary—Remedy of Student.—While it is unfortunate that a student at the University of California should suffer through the negligence or misconduct of the physician entrusted with the care of administering the affairs of the infirmary of that institution, and the condition of such student brought about through the malpractice of such physician is a great hardship upon him, it is one which cannot be remedied by giving him damages at the expense of the institution, but he is left to his remedy against those through whose fault he was injured.

(1) 28 Cyc., pp. 1257, 1258.   (2) 11 C. J., p. 1000, sec. 42 (1926 Anno.).   (3) 4 C. J., p. 664, sec. 2557.   (4) 30 C. J., p. 469, sec. 14.

APPEAL from a judgment of the Superior Court of Alameda County. Jos. S. Koford, Judge. Affirmed.

The facts are stated in the opinion of the court.

McGee, Sapiro & Thomson, McGee & Corgiat and Richard N. Mather for Appellant.

J. M. Mannon, Jr., for Respondents.

TYLER, P. J.—This action was brought to recover damages for personal injuries alleged to have resulted in consequence of the negligence of a physician in charge of an infirmary maintained by defendant at the University of California at Berkeley. A demurrer, both general and special, was interposed to the complaint primarily upon the ground that it shows defendant to be a state agency in charge of a governmental function, and that the infirmary,

being maintained in connection with and as a part of this educational institution, defendant is not liable for the alleged torts of its agents in the operation thereof. The demurrer was sustained, and upon plaintiff's failure to amend judgment was entered in favor of defendants, and plaintiff appeals.

The complaint alleges that prior to and after the third day of April, 1920, plaintiff was a duly enrolled and attending student in one of the courses at the University of California; that it is one of the rules and regulations of the university that before a person can become a regularly enrolled student he must pay an infirmary fee of three dollars, and thereafter semi-annually, which fee the plaintiff paid, and had thereby become entitled to consultation and medical and hospital care at the infirmary thus operated by defendant corporation. There is no charge, so it is alleged, beyond the infirmary fee for ordinary hospital and medical services; but if a surgical operation or special nurse is required the cost thereof must be borne by the patient. The complaint, proceeding, recites that defendant corporation collected the infirmary fee above referred to from several thousands of students each year and held the same as its own funds, and that the students of said university, including plaintiff, did not acquire any interest in the money so paid by them, and that defendant thereby realized a large profit in the administration of the infirmary conducted by it through the collection and retention of such fees required to be paid by all the students. Then follow allegations to the effect that the infirmary is wholly maintained and supported by the fees and charges paid by those entitled to receive treatment, and is so conducted and maintained by defendant separate and apart from its duties as the governing body of the University of California. Further recitals are to the effect that defendant for an adequate and valuable consideration in addition to the infirmary fee mentioned undertook and agreed to perform an operation upon the plaintiff for the removal of his tonsils, and undertook and agreed to render all necessary medical and surgical treatment incident thereto. It is charged that in the course of said operation defendant used negligent, careless and improper methods and treatment, resulting ultimately in a dislocation of the jaw-bone and a fracture of the left side

of the posterior arch of the atlas vertebrae of plaintiff's neck, which injuries, it is claimed, are permanent. Damages in the sum of $151,433.35 are prayed for.

The main contention of appellant and the one chiefly relied upon for a reversal is that the complaint shows that defendant has undertaken to do something separate and apart from any educational function, and in consequence thereof has become liable for the alleged tortious act. In support thereof it is argued that the defendant corporation, The Regents of the University of California, has a dual character—governmental and also proprietary and private; and when acting in the latter capacity its liabilities arising out of either contract or tort are the same as those of natural persons or private corporations, and he invokes the application in his favor of the rule established by the decisions of this state, that a municipal corporation is liable for torts of its agents committed in the performance of activities or functions purely private and proprietary in their nature.

Respondent, on the other hand, contends that the pleading shows on its face that the infirmary is maintained as a part of the University of California, operated only in connection with the educational functions thereof, and this being so, it is not liable for the torts of its agents committed in connection therewith. It further contends as a matter of law that the distinction in actions of this character between governmental and proprietary functions is limited in its application to municipal corporations, and does not extend to state agencies, such as, counties, school districts, road districts and The Regents of the University of California, and that this distinction between torts committed in the course of the exercise of public and governmental functions on the one hand, and of private and proprietary activities on the other, has never been applied to any but municipal corporations; for which reason it claims that the rule invoked has no application to the instant case.

We will proceed to a consideration and discussion of the first contention, namely, whether the allegations of the complaint establish the fact that defendant, in the operation of the infirmary, conducts a private and proprietary enterprise, or whether it shows that the infirmary was in reality a

department of the university conducted by respondent as an educational, and therefore public, activity.

In support of his position appellant claims that it is apparent from the various organic and legislative acts that the legislature had in contemplation two separate kinds of property which the Board of Regents were entitled to manage and control: First, that which belonged to the state outright and which the Regents could not alienate; second, that class of property which the board acquired by gift for investment and reinvestment, and which is separate and distinct from the properties donated by the state for the general purpose of its creation; that as to this class the board acquired such property for business purposes; that it operates the same for such purposes separate and apart from any educational function and derives revenue and profits therefrom, and, therefore, should, like an individual, become liable to third persons for its torts—partaking in this respect of the dual character of municipal corporations considered from the point of view of their twofold activities.

[1]   That a municipal corporation has a double character and, when acting in a private capacity, its liabilities arising out of either contract or tort are the same as those of natural persons or private corporations has long since been definitely settled and established. In treating of this subject Judge Dillon in his work on Municipal Corporations lays down the rule that a municipal corporation possesses a double character—the one governmental, legislative or public; the other in a sense proprietary or private, and says that the distinction between these is sometimes, indeed very often, difficult to trace. In its governmental or public character the corporation is made by the state one of its instruments or the local depositary of certain limited and prescribed political powers, to be exercised for the public good. But in its proprietary or private character the theory is that the powers are supposed not to be conferred primarily or chiefly from considerations connected with the government of the state at large, but rather for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual; and as to such powers and to property acquired thereunder and contracts made with reference thereto, the corporation is to

be regarded as private in character (Dillon on Mun. Corp., 5th ed., sec. 109).

This doctrine has received general recognition in this state. Accordingly, it has been held that a municipal corporation when acting in a private or proprietary capacity is liable for its tort (*Chafour* v. *Long Beach,* 174 Cal. 478 [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670]).

The question, however, as to whether or not the maintenance of a hospital by a municipality is a governmental function is with us one of first impression. Cases dealing with the liability of municipal corporations growing out of the operation and maintenance of different activities, however, are numerous; and they are illuminating as they discuss and determine the difference between governmental and proprietary functions.

In *Sherbourne* v. *Yuba County,* 21 Cal. 113 [81 Am. Dec. 151], it was sought to hold a county liable to one who while an inmate of a hospital suffered injuries from unskillful treatment. It was there held that a *quasi* corporation such as a county is not liable for acts of officers or employees which it appoints in the exercise of a portion of the sovereign power of the state by the requirement of a public law, simply for the public benefit and from which the county as a corporation derives no benefit. This case, however, was decided upon the ground that defendant county exercised exclusively governmental functions.

In *Davoust* v. *City of Alameda,* 149 Cal. 69 [9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536, 84 Pac. 760], the defendant city was operating an electric light plant for the purpose of lighting the city and furnishing electric light to its inhabitants for domestic use. This activity was held not to be a governmental function.

In *Chafour* v. *Long Beach,* 174 Cal. 478 [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670], the question was again presented and discussed. There plaintiff's intestate was killed by the collapse of a platform in an auditorium erected and maintained by the city. The maintenance of the auditorium was by virtue of a permissive statute which contemplated that the hall should be let for profit. It was not devoted to any educational or governmental purpose. Its operation was therefore held to be a private and proprietary activity. In the opinion it is stated

that a municipality is protected from liability only while exercising the delegated functions of sovereignty, which consist of those pertaining to the making and enforcing of police regulations, to prevent crime, to preserve the public health, to prevent fires, the caring of the poor and the education of the young (*County of Alameda* v. *Chambers*, 35 Cal. App. 537 [170 Pac. 650]).

In *Keller* v. *Los Angeles*, 179 Cal. 605 [178 Pac. 505], the complaint demurred to alleged that the municipality maintained a summer camp outside of its corporate limits under authorization of certain provisions of its charter for the purpose of giving the children of the city a vacation, at certain prescribed charges to be paid by them to the city. The demurrer was sustained upon the ground that the city was, in the operation of this activity, engaged purely in the exercise of its governmental function pertaining to the health of the children of the city, and was, therefore, not liable for injuries suffered by the plaintiff by reason of the negligence of its servants in caring for such plaintiff after he had been accidentally injured while an inmate of such camp. It is there further held that the activities involved were referable to the duty of maintaining the public health, and had nothing of the nature of an ordinary business enterprise.

Direct authority, however, upon the precise question is not wanting in other states. Many cases may be found in the various jurisdictions upon the subject, where it is generally held that in the absence of statutory provision to the contrary a hospital created and existing for purely governmental purposes and under the control of the municipality or state is not liable for injuries to a patient caused by the negligence or misconduct of its employees, although a statute, as here, may declare it to be a corporation which may sue and be sued. The maintenance of such hospitals is held to be for the public welfare and the advancement of public health; and in the operation thereof municipalities or the state exercise governmental or political functions. (30 Cyc. 465.) Thus, in *Brouder* v. *City of Henderson*, 182 Ky. 771 [207 S. W. 479], it is said that the power or even the duty on the part of a municipal corporation to make provision for the public health and for the care of the sick appertains to it in its governmental or public capacity, and

that no element of safety is more important than those pertaining to public health; and accordingly it is there held that where a city establishes a hospital it is not responsible to persons injured by reason of the misconduct of its agents or employees. (See, also, 19 Ruling Case Law, 1122; 7 Cal. Jur., 518; *Tollefson Admx.* v. *City of Ottawa,* 228 Ill. 134 [11 L. R. A. (N. S.) 990, 81 N. E. 823]; *Summers* v. *Board of Commissioners,* 103 Ind. 262 [53 Am. Rep. 512, 2 N. E. 725]; *Zummo* v. *Kansas City,* 285 Mo. 222 [225 S. W. 934].)

We do not deem an extensive review of the authorities from the other states essential, and it would answer no useful purpose. Suffice it to say that they generally hold that the maintenance of a hospital by a municipality is a governmental function, and that in the conduct thereof the municipality is not liable for the tortious acts of its employees.

[2] Reading the complaint in the present action from its four corners it conclusively appears therefrom that the infirmary in question is conducted by the defendant corporation for the exclusive use of the students, and that it is so conducted by it for the sole purpose of safeguarding and protecting the health of the student body. This being so, it is in no sense an organization for profit, and the imposition of the small fee does not convert this governmental function into a proprietary one (*Melvin* v. *State,* 121 Cal. 16 [53 Pac. 416]; *Kellar* v. *City of Los Angeles,* 179 Cal. 605 [178 Pac. 505]; *Manning* v. *City of Pasadena,* 58 Cal. App. 672 [209 Pac. 253]). Nor does the further recital that the respondent conducts it separate and apart from its duties as a governing body have this effect, for this is a mere conclusion of the pleader, and it is negatived by the other allegations of the complaint.

This being so, the promotion and welfare of the students in this respect must be held to be the exercise of a duty involving governmental functions in the highest degree.

The reason for the rule that the policy of the law denies liability of a state or municipality for negligence of its servants and physicians is that such an activity being a governmental agency, to permit such liability would result in enormous public burdens (*Jenkins* v. *Charleston Gen. Hospital,* 90 W. Va. 230 [22 A. L. R. 323, 110 S. E. 560]).

That respondent had the power to establish and maintain the infirmary there can be no question. The constitution provides: "The corporation shall also have all the powers necessary or convenient for the effective administration of its trust." (Const., art. IX, sec. 9.)

That the maintenance of the health of the students is an educational activity is indicated not only by the cases cited but also by section 1618a of the Political Code (Stats. 1919, p. 128), which provides that school trustees and county boards of education may provide for proper health supervision in the public schools.

Our attention is called to the cases of *Bloom* v. *City and County of San Francisco*, 64 Cal. 503 [3 Pac. 129], and *Lundy* v. *Delmas*, 104 Cal. 655 [26 L. R. A. 651, 38 Pac. 445], as holding contrary to the views herein expressed. The Bloom case has to do with the maintenance of a nuisance. It therefore presents an exception to the general rule. Where a municipality maintains a nuisance it is liable in damages, and cannot escape such liability on the ground that it is exercising a governmental function. (*Perkins* v. *Blauth*, 163 Cal. 782 [127 Pac. 50].) *Lundy* v. *Delmas* merely holds that the regents of the university are not individually liable for the negligence of the corporation in failing to properly maintain a telegraph line belonging to it. It does not hold the corporation to be liable for the torts of its agents.

Other cases cited deal with the personal liability of agents, and when exceeding their powers. A discussion of these cases is unnecessary, for even conceding that certain language used therein might be construed as supporting appellant's contention, we could not follow them in view of the generally accepted doctrine.

The conclusion we have reached renders unnecessary a discussion of the further question presented by respondent, namely, that defendant is a state agency, and therefore immune from liability irrespective of any distinction between the twofold activities of municipalities.

As above recited, the demurrer interposed was both general and special. The minute order of the trial court was "that the demurrer of the defendant The Regents of the University of California be sustained." Defendant by special demurrer pointed out, among other things, that the

complaint was ambiguous and unintelligible for the reason that it failed to state in what manner the infirmary was conducted separate and apart by defendant from its duties as governing body of the University of California.

It is manifest, and indeed it is not otherwise contended, that the gravamen of plaintiff's action is that defendant in the operation of the infirmary was conducting a private enterprise. **[3]** It is here claimed by appellant that any defect in his pleading in this particular cannot here be availed of, for the reason that the action of the trial court was bottomed upon the general demurrer only, for which reason we are restricted in a review of the decision to consideration of the propriety of the action of the trial court in sustaining the general demurrer to the complaint.

'We do not so understand the law. In reviewing an order sustaining a demurrer the appellate court is not so limited in its action. If the complaint is insufficient upon any ground properly specified in the demurrer the order must be sustained though the lower court may have deemed it sufficient in that respect and may in its order have declared it defective only in some particular in which we hold it to be good (*Burk* v. *Maguire,* 154 Cal. 456 [98 Pac. 21]; *Sechrist* v. *Rialto Irrigation District,* 129 Cal. 240 [62 Pac. 261]). In other words, this court is free to consider each ground of respondent's demurrer to the complaint; and if the demurrer was well taken on any ground the judgment below must be affirmed. If we are correct in our conclusion that the allegations of the complaint show that the infirmary was conducted by respondent as part of the activities of the educational institution, an amendment would avail plaintiff nothing. However this may be, uncertainties in this particular were pointed out to plaintiff under the demurrer; he elected to stand upon his complaint for obvious reasons. Having done so, the judgment on demurrer will not be reversed merely in order to allow an amendment (2 Cal. Jur. 995; 4 Corpus Juris, 1195).

**[4]** In conclusion it may be said that it is indeed unfortunate that plaintiff should suffer through the negligence or misconduct of the physician entrusted with the care of administering the affairs of the infirmary, and the condition of plaintiff brought about through the alleged malpractice of such physician (assuming the allegations to be true) is

a great hardship upon plaintiff; but it is one which cannot be remedied by giving him damages at the expense of the institution in question. Whatever our personal inclination might be, we are bound to take the law as we find it. For such damages a claimant is left to his remedy against those through whose fault he was injured (*Maia* v. *Eastern State Hospital,* 97 Va. 507 [47 L. R. A. 577, 34 S. E. 617]).

For the reasons given we are of the opinion that the demurrer of respondent corporation to the amended complaint was properly sustained, and the judgment rendered thereon should be and it is hereby affirmed.

St. Sure, J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 23, 1924.