[Civ. No. 2185. Fourth Appellate District.—January 11, 1939.]

KATHERINE G. STEWART, Respondent, v. W. A. RICE, Appellant.

Clay & Handy for Appellant.

A. Heber Winder for Respondent.

BARNARD, P. J.—The plaintiff brought this action to quiet her title to a parcel of land. The defendant Rice answered and also filed a cross-complaint by which he sought to have title to the land quieted in him. The court found in all respects in favor of the plaintiff and from a judgment quieting her title the defendant Rice has appealed.

Briefly summarized, the material facts out of which this action arose are as follows: On February 2, 1922, one Jonathan Watson, who then owned the land in question, conveyed it to his daughter, Winifred Stoner, with the understanding that she was to pay him $3,000. On or about that date Watson received $3,000 which was borrowed from a bank in Orange, the note being signed by Watson, Mrs. Stoner and her husband. Shortly thereafter Mr. and Mrs. Stoner borrowed $1,000 and $400 from this bank, giving their notes therefor, which notes were not signed by Watson. A little later these two notes were renewed by a note for $1400 which was signed by Mr. and Mrs. Stoner and also by Watson. On July 18, 1923, Mr. and Mrs. Stoner gave to Watson a note for $4,400, secured by a trust deed on the land in question, which trust deed was recorded on July 28, 1923. It seems perfectly clear that this trust deed was given either to cover the $3,000 which Mrs. Stoner had agreed to pay for the land, plus the $1400 note to the bank which had been signed by Watson, or to cover the liability assumed by Watson in signing the $3,000 and $1400 notes held by the bank. Be this as it may, the evidence shows that Watson paid the $3,000 and the $1400 notes held by the bank on April 9, 1924, by giving

to that bank a note for $4,400 signed by himself alone, which note he later paid. On October 23, 1926, Watson assigned the $4,400 deed of trust given him by the Stoners to C. R. Stewart. Stewart gave notice of default and the land was sold to him at trustee's sale and he received a trustee's deed therefor on October 23, 1931, which deed was recorded. Two days later he conveyed the property by deed to Katherine G. Stewart, the respondent, who is his mother.

In August, 1923, the appellant Rice drilled a well for the Stoners on other property owned by them, which was not covered by the deed of trust above referred to. On September 1, 1923, he was given a note for $1740 signed by the Stoners for his work on the well. At some later date this indebtedness was reduced to a judgment, an attachment being levied on the land here in question on April 6, 1927. Nothing further was done until January 10, 1933, when an abstract of this judgment was recorded. At an execution sale the Stoners' interest in the land was sold to the appellant Rice, his certificate of sale being recorded on October 2, 1934. About a year and a half later, when the respondent attempted to sell the property, she discovered the existence of the appellant's claim and this cloud upon her title, and this action followed.

It is appellant's contention that the $4,400 trust deed, through which the respondent acquired title to the property, was void and ineffective from the beginning and that its invalidity was at all times known by C. R. Stewart and Katherine G. Stewart, the respondent. In this connection it was stipulated that anything that was known by C. R. Stewart was known by Katherine G. Stewart, and that she is to be charged with any knowledge which is chargeable to him.

It is first contended that there was no consideration for the $4,400 note and trust deed given by the Stoners to Watson on July 18, 1923. It is argued that the Stoners borrowed $3,000 from the bank in Orange and paid the same to Watson for the land; that while Watson signed this note it must be presumed that he signed only as an accommodation maker; that he was, therefore, a surety for the Stoners; that under the law of this state a principal owes nothing to his surety until the surety has paid the debt; that at the time the trust deed was given Watson had not paid the $3,000 note to the

bank; and that it follows that there was no consideration for the trust deed.

It does not necessarily appear that Watson was merely a surety. All three parties signed the $3,000 note to the bank and Mr. Stoner testified that Watson obtained the credit at the bank. Be that as it may, Watson had incurred a further obligation by signing the $1400 note for the Stoners. The banker testified that Watson paid the $3,000 note and the $1400 note on April 9, 1924, by giving the bank his note for $4,400, which the Stoners did not sign, and that this note was later paid. All of this was long before the appellant levied an attachment on the property. Moreover, on October 23, 1926, some six months before the appellant levied an attachment upon the property, C. R. Stewart purchased the $4,400 trust deed from Watson, paying $4,000 in cash for it. There is evidence that Watson told Stoner he was in need of cash and asked him if he could find someone who would buy the $4,400 trust deed, saying that he was willing to discount it. Stoner suggested to C. R. Stewart, who was his banker, that he should buy the note and trust deed, which Stewart did. While the appellant states that Stewart knew that the note was void for a lack of consideration he points to no evidence to sustain that contention and we find none. As far as the original transaction is concerned there is ample evidence of a benefit conferred upon the Stoners and a prejudice suffered by Watson, and a valid consideration appears. Thereafter, C. R. Stewart purchased the trust deed before any claim of the appellant appeared of record, paying a substantial consideration therefor, and the court's finding to the effect that Stewart had no knowledge of any infirmity or invalidity in connection with the trust deed is amply supported.

It is next contended that the $4,400 trust deed was given by the Stoners to Watson for the purpose of hindering creditors and that the only purpose of the Stewarts in obtaining possession of this trust deed and note was to hinder creditors. It is argued that it must be inferred from the circumstances that Watson, in taking the trust deed, and C. R. Stewart, in later acquiring it, did so with the fraudulent purpose of protecting the Stoners from their creditors.

The land in question, a valuable orange grove, was given by Watson to his daughter, Mrs. Stoner, with the exception

of the $3,000 payment which Watson desired in order to pay off an encumbrance thereon. In October, 1922, the Stoners mortgaged the land to one Giroux for $7,500. This was the only encumbrance which was prior to the $4,400 deed of trust here in question. At that time the Stoners had other property of considerable value and there is no evidence that they were then otherwise indebted. Subsequently, the Stoners gave a deed of trust to the First National Bank of Ontario securing a note for $11,000, and still later, gave a mortgage on the property to the Bank of Perris for $2,597. C. R. Stewart was an officer of the Bank of Perris and he and his father owned practically all of its stock. In 1928, C. R. Stewart purchased the $7,500 mortgage held by Giroux and in 1931 bought the $11,000 deed of trust held by the First National Bank of Ontario for $500. In other words, Stewart, before he foreclosed the $4,400 deed of trust, purchased the prior mortgage and also bought for $500 a subsequent deed of trust for $11,000.

The appellant argues that fraud must be inferred in connection with this $4,400 deed of trust, both in its inception and in connection with its transfer to Stewart, because of these facts and of the further facts that Stewart had acted as banker for the Stoners for some years, that in October, 1925, the Stoners assigned the proceeds of the land to C. R. Stewart's father, who collected these proceeds for some years and paid them out on the order of the Stoners, and that Stewart did not foreclose the $4,400 trust deed until 1931. The fact that the Stewarts, under an assignment, collected the proceeds of this land for some years and paid it all out on debts owed by the Stoners, without applying any portion thereof on their own claims, certainly does not compel the conclusion that they were engaged in an attempt to hinder and defraud the creditors of the Stoners. The fact that they waited some years before foreclosing the deed of trust and that they spent considerable money in protecting their investment and clearing their title does not, in itself, indicate fraud. If it could be assumed that some portions of the evidence would justify an inference of fraud a contrary inference is not only possible but much of the evidence is entirely inconsistent with any idea of fraud in connection with the giving of this deed of trust or with its later transfer to C. R. Stewart. At best,

the question is one of fact and the findings and conclusion of the trial court are amply sustained.

A further consideration is that the court found that the appellant levied his attachment on this property on April 6, 1927, but took no further steps until he recorded his abstract of judgment on January 10, 1933, and his certificate of sale on October 2, 1934; that he took no further steps in enforcing his claim until he filed his cross-complaint herein on June 23, 1936; that this delay on his part was unreasonable; that by this conduct he was guilty of laches; and that such delay had been to the detriment of the respondent. These findings are amply sustained by the evidence and the appellant himself testified that in 1925 Stoner told him that certain of his property "was being turned over to Mr. Stewart to keep his creditors from getting it away from him". There can be no question that the delay of the appellant in pressing his claim resulted in detriment to the Stewarts in many respects. Not the least of these is the fact that the Stewarts, in 1931 and after they had foreclosed the $4,400 deed of trust, released the Giroux mortgage which was a first lien upon the property, for which they had paid $7,625, in 1928, long after the appellant claims to have been told that the Stoners were "covering up".

For the reasons given the judgment is affirmed.

Marks, J., and Griffin, J., concurred.