[Civ. No. 31650.   Second Dist., Div. Two.   Jan. 22, 1969.]

ERNEST OATES et al., Plaintiffs and Appellants. v. WILLIAM E. NELSON et al., Defendants and Respondents.

Millard M. Mier and Ralph Sadler Rosen for Plaintiffs and Appellants.

Loeb & Loeb, Jerome L. Goldberg, Albert F. Smith and Leon R. Shearer for Defendants and Respondents.

HERNDON, J. — Plaintiffs appeal from the judgment entered October 6, 1966, wherein the trial court ordered that

"plaintiffs' complaint shall be and hereby is stricken and that the within action shall be and hereby is dismissed." A résumé of the procedural history of this litigation is necessary to an understanding of the issues presented for our consideration.

On December 10, 1965, appellants filed in the Central District of the Superior Court of Los Angeles County a complaint in two counts seeking to "reform documents and quiet title" to certain real property. Appellants alleged that in 1961, they had agreed to sell certain real property to respondents in accordance with escrow instructions filed with the Security First National Bank, Highland Park Branch. They alleged that this sale was consummated by means of a grant deed and certain trust deeds executed by appellants and by respondents, respectively, all of which were recorded on July 11, 1961. Appellants alleged, however, that "by reason of an error in the property description . . . prepared by the escrow department of the Security First National Bank" each of these deeds "included additional property not contemplated to be sold by plaintiffs."

It was further alleged in appellants' original complaint that the property thus "erroneously, inadvertently, and mistakenly" included in these deeds consisted of "a narrow twenty-foot strip of land giving plaintiffs their main access to a larger parcel [owned by plaintiffs]." This strip at all times had "been fenced and at no time could be mistaken as a part of the real property sold by plaintiffs through the escrow . . .; that plaintiffs have had uncontested and free use of said twenty-foot strip as a means of access to their larger parcel for many years prior to inadvertent conveyance to defendants, and *at all times since said conveyance*." (Italics added.)

Appellants sought by the prayer of this complaint to have the error in the deeds corrected and their title to the strip quieted. They offered to repay to respondents any taxes that respondents might have been required to pay by reason of the inadvertent inclusion of this additional strip of land within their grant deed.

Respondents demurred generally to appellants' complaint on the ground that no cause of action was stated in that appellants had not expressly alleged that the mistake was "mutual" and that in any event the action was barred by the statute of limitations. (Code Civ. Proc., § 338, subd. 4.) By minute order dated March 10, 1966, this demurrer was sus-

tained and appellants were granted 15 days within which to amend.

Although the minute order does not explicitly so state, it is clear that the ruling therein was based upon the court's acceptance of respondents' contention that the action was barred by the statute of limitations. Almost the entirety of respondents' ''Memorandum of Points and Authorities in Support of Demurrer'' had been devoted to this contention. The further contention that no cause of action was stated by reason of appellants' failure to make the formal conclusional allegation that the mistake was ''mutual'' was only briefly and casually stated in the concluding paragraph thereof.

Such priority of emphasis is understandable. The use of the word ''mutual'' would have added nothing to the allegation that the mistaken legal description of the property was the result of an error *by the escrow agent* and that *both appellants and respondents had executed* contemporaneously recorded documents in which the additional property was ''inadvertently, mistakenly, and erroneously included.'' In addition, appellants had alleged that the mistaken inclusion of the strip of property was ''of no force and effect whatsoever for lack of consideration, in that no consideration was paid for the said real property.'' The legal import of these allegations is that respondents had been equally mistaken as to the property described in the several deeds since if they had bargained for, and expected to receive, the strip of land in issue, then their purchase price would have been paid in *consideration* therefor.

Any doubt as to the basis of the court's ruling was clarified after appellants' counsel, instead of amending their pleading, determined to voluntarily dismiss the initial action and to refile it in the branch court wherein the property was situated. Their second complaint consisted of general allegations in one count seeking to quiet title to the disputed strip. Respondents moved to have the case transferred to the Central District and in their supporting points and authorities asserted: ''The demurrer [to the original complaint] was sustained primarily upon the ground that the reformation action was barred by the Statute of Limitations and that specific allegations of the reformation action controlled the general allegations of the quiet title action, and accordingly, the quiet title action was also barred. (See *Leeper* v. *Beltrami*. 53 Cal.2d [195] [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803] (1959).)''

The motion to transfer was granted and respondents then

filed their demurrer and motion to strike appellants' second complaint. The same judge who had ruled on the demurrer to appellants' original complaint heard these subsequent proceedings and properly took judicial notice of the prior action. (*Flores* v. *Arroyo*, 56 Cal.2d 492, 496-497 [15 Cal.Rptr. 87, 364 P.2d 263].)

In their points and authorities in support of their second demurrer and their motion to strike, respondents expressly acknowledged that "A demurrer was sustained [in the prior action] *upon the grounds that the same was barred by the applicable statute of limitations."* (Italics added.) Appellants' points and authorities in opposition to respondents' motion unmistakably demonstrate that they also shared the view that the only determinative issue was that of the applicable statute of limitations.

Regrettably, from the record before us it appears that appellants failed to call the trial court's attention to the fact that since they had been in possession of the disputed property throughout the period in issue, the rule enunciated in *Muktarian* v. *Barmby*, 63 Cal.2d 558, 560 [47 Cal.Rptr. 483, 407 P.2d 659], governed rather than that of *Leeper* v. *Beltrami*, 53 Cal.2d 195, 214 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803], relied upon by respondents. The court therefore considered appellants' second complaint as if the dates relevant to the issue of limitations alleged in the original complaint had not been omitted and granted respondents' motion.

■ In view of the presentation made by appellants' counsel, and his decision to dismiss and refile the action in another district of the court, the trial court is hardly to be criticized for its ruling herein. Nevertheless, it was erroneous As stated in *Muktarian* v. *Barmby, supra,* 63 Cal.2d 558, 560-561:

"Plaintiff contends that the trial court erred in holding that the three-year statute of limitations governing actions based on fraud or mistake bars his action. (Code Civ. Proc., § 338, subd. 4.) Since there is no statute of limitations governing quiet title actions as such, it is ordinarily necessary to refer to the underlying theory of relief to determine which statute applies. (See, e.g., *Leeper* v. *Beltrami*, 53 Cal.2d 195, 214 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803] [relief dependent on rescission of a contract, rule requiring prompt action applies]; *Kenney* v. *Parks*, 137 Cal. 527, 530 [70 P. 556] [nondelivery of deed, Code Civ. Proc., § 318 applies;

failure of trust condition, Code Civ. Proc., § 343 applies];
*Estate of Pieper,* 224 Cal.App.2d 670, 689 [37 Cal.Rptr. 46]
[nondelivery of deed, Code Civ. Proc., § 343 applies]; *Turner*
v. *Milstein,* 103 Cal.App.2d 651, 657-659 [230 P.2d 25] [extrinsic fraud, Code Civ. Proc., § 338, subd. 4, applies].) *In the present case, however, it is unnecessary to determine which statute would otherwise apply, for no statute of limitations runs against a plaintiff seeking to quiet title while he is in possession of the property. (Smith* v. *Matthews,* 81 Cal. 120, 121 [22 P. 409]; *Faria* v. *Bettencourt,* 100 Cal.App. 49, 51-52 [279 P. 679]; 1 Witkin, Cal. Procedure (1954) Actions, § 111, p. 613; 41 Cal.Jur.2d, Quieting Title, Etc., § 25, p. 493: see *Newport* v. *Hatton,* 195 Cal. 132, 145 [231 P. 987]; *Sears* v. *County of Calaveras,* 45 Cal.2d 518, 521 [289 P.2d 425]; see also, *Berniker* v. *Berniker,* 30 Cal.2d 439, 448 [182 P.2d 557].) In many instances one in possession would not know of dormant adverse claims of persons not in possession. (See 1 Witkin, Cal. Procedure (1954) Actions, § 111, p. 613.) Moreover, even if, as here, the party in possession knows of such a potential claimant, there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him. (See *Berniker* v. *Berniker, supra,* 30 Cal. 2d at p. 448.) Of course, the party in possession runs the risk that the doctrine of laches will bar his action to quiet title if his delay in bringing action has prejudiced the claimant. (*Stewart* v. *Rice,* 30 Cal.App.2d 335, 340 [86 P.2d 136]; see *DaSilva* v. *Reeves,* 215 Cal.App.2d 172, 175 [30 Cal.Rptr. 81]; see also *Berniker* v. *Berniker, supra,* 30 Cal.2d at p. 448 [7].) In this case, however, the trial court erred in holding that plaintiff's action was barred by the statute of limitations and thus did not reach the question of laches.'' (Italics added.)

It has been suggested that the order of the trial court dismissing appellants' action is sustainable because of the inappropriate procedure followed by their counsel in dismissing the original action and in filing the second complaint which omitted the specific allegations of fact contained in their original complaint. While this suggestion may have superficial appeal, the record indicates that this was not the theory or the basis upon which the trial court rested its decision.

More importantly, and particularly in view of the error in the trial court's holding that the action was barred by limitations, it would seem quite unreasonable to impose such a harsh penalty upon appellants for the procedural mistakes of their counsel. If we assume the truth of all the facts alleged in appellants' original complaint, respondents would be unjustly

enriched and justice would be defeated by a judgment which would operate to award them a valuable strip of property for which they had neither bargained nor paid. We have concluded that this cause should be remanded to the end that the rights of the parties may be determined after a trial on the merits.

The judgment is reversed.

Fleming, J., concurred.

ROTH, P. J.—I dissent.

Our Supreme Court points out in its order of retransfer of this case that *Muktarian* v. *Barmby*, 63 Cal.2d 558, 560 [47 Cal.Rptr. 483, 407 P.2d 659], limits the doctrine of *Leeper* v. *Beltrami*, 53 Cal.2d 195 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803], insofar as the statute of limitations is concerned. There is nothing in the order of retransfer which remotely suggests that *Muktarian* limits the doctrine of *Leeper* which requires our courts to look beyond the relief sought when the facts of the basic cause of action are apparent from the face of a pleading.

The pertinent allegations of count I in appellant's first complaint (to reform documents and quiet title) do not state a cause of action on any theory, and the judgment should be affirmed irrespective of the statute of limitations or of the ''court-shopping'' which obviously took place in the trial forum.

One of the grounds of the demurrer to the first action as well as the second was the general defect that no cause of action was stated on any valid theory, although the record shows that in the first action as well as the second the point emphatically argued in the trial court was the statute of limitations.

It is settled law that if the complaint is fatally defective upon any ground properly specified in the demurrer, the order must be sustained even though the trial court may have rested its ruling on a particular facet of the case which it deemed to be defective and which we hold to be good. (*Davie* v. *Board of Regents*, 66 Cal.App. 693, 702 [227 P. 243]; *Burke* v. *Maguire*, 154 Cal. 456, 461 [98 P. 21]; *Bank of America* v. *Vannini*, 140 Cal.App.2d 120, 127 [295 P.2d 102]; *Weinstock* v. *Eissler*, 224 Cal.App.2d 212, 235-236 [36 Cal. Rptr. 537].) In other words, this court is free to consider each

ground of respondent's demurrer to the complaints in the first and second action, and if the demurrer was well taken on any ground the judgment below must be affirmed. (*Davie* v. *Board of Regents, supra.*)

It is clear from the foregoing that irrespective of the statute of limitations and the "court-shopping" technique utilized by appellant in the trial court, if the second action had been filed within the original forum (rather than a different district of the Los Angeles Superior Court), the "judicial action" of the trial court irrespective of the "judicial reasoning" in ordering a dismissal of the second action, was valid.

Factually, it should be emphasized, too, that there are two trust deeds outstanding against the property involved (inclusive of the disputed strip) and that the beneficiaries of each were in no way parties to the contract of purchase and sale. These beneficiaries were not parties to the first action, and although apparently made parties to the second action, there was no appearance by them and the record does not show they were served.

The pertinent allegations of the reformation count of the first action are as follows: ". . . that by reason of an error in the property description in the Grand [*sic*] Deed prepared by the escrow department of the Security First National Bank, and not noticed by plaintiffs, the said Grant Deed included additional property not contemplated to be sold by plaintiffs; that the said additional property was also included in the following documents: (1) Deed of Trust . . . executed by . . . Nelson . . . to secure a promissory note of $32,800 . . . (2) Deed of Trust dated April 11, 1961, executed by . . . Nelson to secure a promissory note of $2,050.00 . . .;

". . . That through error, inadvertence and mistake plaintiffs erroneously executed said Grant Deed in favor of . . . Nelson;

". . . that, prior to the opening of escrow and at all times since that time, the said parcel has been fenced and at no time could be mistaken as a part of the real property sold by plaintiffs . . . that plaintiffs have had uncontested and free use of said 20 foot strip as a means of access to their larger parcel for many years prior to inadvertent conveyance to defendants, and at all times since said conveyance. . . ."

None of these allegations state a cause of action on the theories of reformation scrivener's error, mutual mistake, prescriptive easement, or adverse possession. None of the allegations in count I of the first action are sufficient to entitle

appellant to reformation of a deed they executed or reformation of two separate trust deeds executed by their vendee Nelson to persons other than appellants.

A cause of action for reformation of a deed is sufficient only where it is alleged that there has been a mutual mistake of the parties or a unilateral mistake known or suspected by the other party. (Civ. Code, § 3399; *Auerbach* v. *Healy,* 174 Cal. 60, 63 [161 P. 1157]; *McClure* v. *Cerati,* 86 Cal.App.2d 74, 83 [194 P.2d 46]; *Girard* v. *Miller,* 214 Cal.App.2d 266, 273 [29 Cal.Rptr. 359].) Appellant's complaint alleges only unilateral mistake on their part. It fails to allege mutual mistake or that their mistake was suspected, known to or concurred in by respondents or any ultimate facts from which such inference can be properly drawn.

Appellants' contention that a mistake by the scrivener in reducing the intent of the parties to writing is grounds for reformation is correct. (*California Pac. Title Co.* v. *Moore,* 229 Cal.App.2d 114, 116 [40 Cal.Rptr. 61].) However, the error of the scrivener must be one which mistakes the intent of the principals on both sides of the transaction. For example, in *Mills* v. *Schulba,* 95 Cal.App.2d 559 [213 P.2d 408], the complaint alleged an error of the attorney "jointly employed." At bench, there is no suggestion in count I of the first action that the respondent in any way shared in the mistake of the appellant or the scrivener.

Appellants argue, however, that it is well settled law that the holder of an escrow is agent for all the parties up to the time the escrow is closed. (*Oldenburg* v. *Brody,* 139 Cal.App. 2d 543, 555 [293 P.2d 844]) and the allegations of count I of the first action are sufficient because it is clear that the escrow department prepared the documents. However, since mutuality of mistake is nowhere alleged and in view of the trust deeds taken out by respondents, which fact appears to be avoided, count I of the first action is insufficient to sustain on the ground of mutual mistake.

Adverse possession requires a showing that appellants were in actual possession of the disputed parcel, coupled with acts clearly proclaiming their right of ownership. (*West* v. *Evans,* 29 Cal.2d 414, 417 [175 P.2d 219]; 2 Witkin, Summary of Cal. Law (1960) p. 871.) The fact that the strip was fenced and that appellants had free and uncontested use thereto is not equivalent to an allegation that appellants were in actual possession of the disputed parcel.

The possession must be exclusive. (*Miller* v. *Doheny,* 50 Cal.App. 413, 419 [195 P. 745]) and the complaint does not

allege the claimed possession was exclusive in the appellants.

The period of possession must be at least five years. (Code Civ. Proc., §§ 318, 319, 325.) The deed here to respondents was recorded July 11, 1961, less than five years prior to filing the original complaint.

Payment of taxes is required under Code of Civil Procedure, section 325. The complaint states that respondents paid the taxes on this property since the conveyance.

The same defects preclude a cause of action to obtain an easement by prescription. (2 Witkin, Summary of Cal. Law (1960) p. 1028.)

It is clear from the record that the trial court in the first action made a proper and valid order. Appellants were allowed 15 days to amend and cure if they were able so to do the defects of count I of the first action. They elected not to do so.

We have before us then the narrow question of whether the trial court was charged with the responsibility of knowing the defects in the complaints in both actions—other than the one upon which it specifically rested, and before dismissing the second action whether it had the duty to direct appellants' attention to additional defects in count I of the first action.[1] To so hold is in effect to nullify the rule that a valid ruling will be upheld irrespective of the reasons upon which it was made.

The record does not show that appellants asked for an opportunity to amend the second action at any time before the order dismissing it was made or to otherwise protect themselves against the dismissal.

The record in the trial court shows that appellants avoided amending the first action, even though given an opportunity so to do. In addition, there is nothing in the record of pro-

---

[1]Although the Clerk's Transcript does not show that appellants had an opportunity to amend after the motion to strike was granted, it appears they did have. After retransfer of the case to this court, we requested the filing of additional briefs pointing out in said request all of the questions herein discussed. Respondents in their brief make the following pertinent statement:

"It is . . . to be noted that after the second complaint was stricken, appellants still had an opportunity to move to set aside their voluntary dismissal of the first action, and were in fact invited to do so by the trial court. Had that dismissal been set aside, appellants could then have amended their first complaint, or allowed a judgment to be entered and appealed from the judgment. On that appeal the issue would have been the sufficiency of the initial complaint, and not, as here, whether the trial court was justified in striking the second complaint as sham and deceptive. Appellants chose not to follow orderly judicial process."

Appellants make no denial of said statement.

ceedings in the trial court, nor in the extended proceedings before this court, which suggest that appellants could amend so as to cure the defective allegations of count I of the first action. Appellants, having exposed the nature of their claim by verified allegations, should not be able to indefinitely cloud title to the strip in question by immunizing in the form of a second general cause of action clandestinely filed, what the record shows to be a defective claim of title.

On the record before us, the trial court made valid orders in both actions. Appellants not only did not at any time request the court to relieve them of the effect of such orders, but actually ignored in the first action the opportunity given to amend and ignored the court's invitation extended in the second action to set aside the dismissal of the first action. (Note 1.) In my opinion, the trial court was the forum in which to cure the defects of each action, if they could be cured. Reversing the judgment in this case places the imprimatur of this court not alone on loose pleading and loose conduct, but also upon a new procedure for prolonging actions which will inevitably prevent a just and proper disposition of litigation.

On February 20, 1969, the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied March 21, 1969.