[Civ. No. 16467. Second Dist., Div. One. Aug. 26, 1948.]

E. J. PRIMM et al., Appellants, v. ALBERT M. JOYCE et al., Respondents.

Samuel L. Rummel and Gavin Morse Craig for Appellants.

Max Hurwitz and Hahn & Hahn for Respondents.

DORAN, J.—This is an appeal from the judgment in an action for unlawful detainer.

As recited by appellants, "a *prima facie* case for plaintiff was stipulated to by defendant Joyce. The Court ruled that the pleadings made out a *prima facie* case unless defendant established his affirmative defenses set forth in his answer. To this ruling defendant Joyce acquiesced and the trial proceeded in accordance therewith."

The facts which are not disputed are briefly summarized by appellant as follows:

"On November 8, 1946, plaintiffs and defendant Joyce executed a written instrument by the terms of which plaintiffs leased to Joyce certain described real property in the City of Pasadena, California, for a period of five years. The lease provided among other things by paragraph Twelve thereof that the lessee was not to assign the lease or to sublet any part of the premises without lessors' consent with certain exceptions which admittedly do not apply to the facts of this case. Defendant Joyce entered into possession of the premises under the lease and thereafter in violation of the provisions of paragraph Twelve thereof sublet a portion of the premises to defendant Mills without consent of plaintiffs. A notice in compliance with law was served upon defendants requiring them to surrender possession of said premises within three days and declaring plaintiffs' election to declare a forfeiture of the lease." Defendant failed to vacate and the within action was filed.

More particularly, as pointed out by appellant, the court found that all of the material allegations of the complaint were true and, "all of the allegations and denials of the answer by defendant Joyce were found to be untrue, except that the Court found to be true the allegations of paragraph I of defendants' third, further and separate defense, to-wit, 'that plaintiffs on or about April 1, 1947, had notice and knowledge of said sublease, accepted the benefits of said lease by accepting the rent 'on or about the 15th day of the months of April, May, June, July, August and September, 1947.' " The action was filed on October 1, 1947.

It is contended on appeal that the findings are unsupported by the evidence and in particular that, "there was no evidence in support of the above finding concerning notice and knowledge by plaintiffs of the sublease."

Paragraph 12 of the lease which defendant is alleged to have violated is as follows:

"Twelfth: It is agreed that the lessee shall not assign this lease nor any rights thereunder, nor sublet the premises or any part thereof, save and except the structures now upon said premises as hereinbefore set forth, without the written consent of the lessor first had and obtained." The lease was dated November 8, 1946.

Defendant admitted the violation and in that connection testified as follows:

"THE COURT: Mr. Joyce, when did you sublet this metal building that you moved on, about April, as alleged in the complaint? A. I believe it was sometime in March.

"Q. And what was the nature or character of the business which was conducted there? A. It was general food, hamburgers and hot dogs, and so forth.

"Q. What name was the business there conducted under? A. Under the name of 'Hi Junior'.

"Q. 'Hi Junior' hotdogs, or something like that? A. 'Hi Junior' was the name of the stand. It was the child of my brain, I just thought that I would reverse Junior Hi to Hi Junior.

"Q. Did you have anything to do with the operation of these premises? A. Yes, sir, I ran it.

"Q. To whom did you sublet it? A. To Harry Mills.

"Q. You ran it for Harry Mills, then? A. No, your Honor, I had people running it for me and I found that due to illness I couldn't possibly make the trip from Balboa every day, and Mr. Mills—I met him and he was looking for a stand or so-called concession like some that I have at the beach, and we couldn't make a deal through some sublease of mine down there, and we told him about this up here at Pasadena and he liked it, and that was when we subleased it to him.

"Q. After you sub-leased it you did not go back on the premises to run it? A. No, not to run it.

"Q. Did you tell Mr. or Mrs. Primm anything about that? A. No, your Honor, I did not.

"Q. Who paid the rent after that to the Primms, you or your sub-lessee? A. I did, your Honor.

"Q. Do you know that they were ever around there and saw Mr. Mills running it? A. Well, I assume that they were.

"Q. Well, to your own knowledge, were they ever around there to see Mr. Mills running it? A. No, not to my knowledge. I wasn't up there very often."

It will be seen then from the foregoing that the property was leased in November, 1946, and violated by defendant the following March.

It is respondents' contention that plaintiffs' conduct thereafter amounted to a waiver and constituted an estoppel. The defense is based on a single word contained in a letter from a Mr. Schroeder who was lessor's "secretary, auditor," which letter is as follows:

"April 1, 1947

"Albert M. Joyce
Box 658
Balboa, California

Dear Mr. Joyce,

Your check in the amount of $300 was returned by our bank, marked "insufficient funds". I immediately thought there was possibly an error so I had our bank call the Allen and Cole Branch of the Bank of America and they informed us that no mistake had been made and that the check at this time was not good. I would appreciate hearing from you at once.
Also, when I called the Sycamore Number at the Station they informed me that you were not operating any part of the corner and they did not know when you would be back in Pasadena.

Very truly yours,
PRIMM INVESTMENT & LOAN CO.
/s/ W. H. Schroeder"

"WHS:hrt"

The paragraph in the above letter which reads, "Also, when I called the Sycamore Number at the Station they informed me that you were not operating any part of the corner and they did not know when you would be back in Pasadena" and in particular the word "operating," respondent contends is evidence of knowledge on the part of Mr. Schroeder that the premises had been sublet; that such knowledge on the part of Mr. Schroeder was "imputable to Primm and that the receipt of rent from Joyce thereafter constituted a waiver."

██ There can be no dispute as to the law that the burden was on defendant to prove the affirmative defense in this case, the waiver. ██ Nor can there be any disagreement with the proposition that knowledge sufficient to operate as an estoppel must be actual and not merely presumptive. ██ And it should be emphasized that the law is well settled that notice

to an agent is notice to the principal only as to those things within the scope of the agency.

There is not a scintilla of evidence in the record that Schroeder was any more than a secretary and auditor as described by both. Mr. Primm testified in part as follows:

"The Court: Who took charge of your business affairs when you were away, Mr. Primm? A. My office did and Mr. Schroeder was in charge.

"Q. By Mr. Hurwitz: Did Mr. Schroeder have any authority to deal with the property in your absence? A. No."

Mr. Schroeder testified as follows:

"Q. Mr. Schroeder, you are employed by Mr. Primm? A. Yes, sir.

"Q. That is in the capacity of auditor and secretary? A. Well, I would say auditor.

"Q. Now, Mr. Schroeder, were you familiar with this lease which is the subject of this law suit? A. In the collection of rent, yes, I was. But as far as the provisions of the lease, no."

The record is destitute of any evidence that Mr. Schroeder was Mr. Primm's agent with authority to deal with any of Mr. Schroeder's property except to collect the rents; the evidence is insufficient to establish even an ostensible agency to the extent that knowledge of the agent is knowledge of the principal as contended for by respondent.

Respondent argues that the court disbelieved Mr. Primm and Mr. Schroeder. But, assuming this to be a fact, what then is left upon which to base a conclusion or inference that either or both had actual knowledge and intended a waiver? An inference must be founded on a fact legally proved. (Code Civ. Proc., § 1960.) An inference may not be based on an inference much less a suspicion. Respondents' argument in this regard is specious and is unconvincing. There is nothing in the testimony of either witness that justifies respondents' assertion that the trial court found that there was an agency "based on the testimony of Schroeder and Primm, both of whom contradicted themselves as to the scope of authority and the Trial Court had discretion to determine which portions of their testimony he believes." Nor does the record justify the further argument that, "In view of their contradictions, it would be impossible for the trial court to believe everything they had said."

At the conclusion of the trial appears the following:

"The Court: He is a business man and working for Mr. Primm, collecting rents. When he says that someone is not

operating a hot dog stand he means that he is not in it any more and someone else is, and that is what 'operating' means.

"Mr. Schroeder, as far as I am concerned, is Mr. Primm, and I do not want to hear any more argument on it."

The only evidence on the subject was Mr. Schroeder's testimony as to what was intended by the use of the word "operating" which is as follows:

"The Court: You used the word 'operating.' In your letter you say you learned that he was not operating any part of the corner. What did you mean?

"A. I meant that he wasn't there working."

That the word "operating" has numerous meanings according to the sense in which it is used there can be no question. Mr. Schroeder testified as to what was meant and intended by the word as used in the letter and, as above noted, the trial judge stated substantially the same thing. Nevertheless, the court continued: "Mr. Schroeder, as far as I am concerned, is Mr. Primm"; yet, neither as a matter of fact nor as a matter of law, is there anything in the record to support such a conclusion.

The testimony of the defendant affirmatively establishes the fact that the contract was violated by defendant wilfully, knowingly and intentionally. Notwithstanding this flagrant culpability defendant seeks relief by resorting to an equitable defense and bases such effort on the argument that plaintiff approved of and waived the admitted violation. As heretofore noted in substance, the burden was on defendant to establish such an affirmative defense by a preponderance of the evidence. That defendant has failed to meet this elementary legal requirement there can be no question. The findings of fact are unsupported by the evidence and the conclusions of law are therefore unwarranted.

For the foregoing reasons, the judgment is reversed and the cause remanded with directions to enter judgment for plaintiff.

York, P. J., and White, J., concurred.