[Civ. No. 4165.   Fourth Dist.   Nov. 30, 1950.]

CLYDE E. DANIELS et al., Respondents, v. WILLIAM OLDENBURG et al., Appellants.

Harry Ashton for Appellants.

L. A. West for Respondents.

GRIFFIN, J.—Action for rescission of lease. In response to an advertisement, plaintiffs, on April 11, 1949, entered into a written lease with defendants covering a service station, garage, and auto court or motel located on Santa Ana Canyon Highway near Corona. The lease was for a term of approximately five years at an agreed price of $16,665, payable in monthly payments. One thousand dollars was paid and plaintiffs took possession on the date the lease was signed. They operated the properties for about eight or ten days and then served defendants with a written notice of rescission.

Defendants had previously acquired the premises in some trade and operated it for a while. It was at the time located on a two-way highway. The station and auto court were accessible from the highway. Subsequently, a freeway was constructed and the grade made the property less accessible to such traffic. It was about this time that defendants decided to lease the property.

Plaintiffs' complaint alleged that they were induced to enter into the lease because of certain false and fraudulent representations made by defendants to plaintiffs, namely (a) that defendants falsely represented that plaintiffs "could keep the motel rented all the time," when, in fact, during the 10 days plaintiffs were in possession they had no call for and were unable to rent any of the cabins; (b) that defendants falsely represented that the state was going to place a guardrail between the service station and the highway along a large ditch located there; that in truth and fact the state engineers intended to build a fence close to the service station which would interfere with the operation thereof and in fact had driven iron stakes along that course; (c) that defendants fraudulently represented that plaintiffs could sell 2,900 gallons of gasoline per month at that station when in fact, during the time plaintiffs were there, they were only able to sell an average of 14 gallons per day; (d) that defendants falsely represented that they would install two floodlights, which they failed to do; (e) that defendants falsely represented they would deliver to plaintiffs an inventory of all the property but up to the time of the notice of rescission they failed to do so and plaintiffs were unable to determine what personal property was transferred under the lease. It is then alleged

that plaintiffs returned everything of value to defendants and demanded the return of the money paid. In an amendment to the complaint it is alleged that defendants had been in possession of the leased premises since September, 1948, operating the same, and that they knew the actual returns therefrom; that the false representations made by defendants were made as matters of fact and not of opinion; that the representations as to the earnings from the property were false and untrue and made for the purpose of deceiving plaintiffs and inducing them to enter into the lease; that at the time the lease was signed the properties had no return quality rental value or earning capacity of $16,665 in the five-year period or any sum in excess of $120 per month, and that defendants well knew of this fact.

Defendants denied generally these allegations. They admitted stating to plaintiffs that the gas gallonage sold in March, 1949, was 2,900 gallons; and claim that the State Highway Department was constructing a limited access freeway along and in front of the property and that traffic was only temporarily diverted from one side of the highway to the other, and that such temporary diversion greatly curtailed the volume of traffic only during the limited period plaintiffs occupied the property; that these facts were physically apparent to plaintiffs at the time and that they personally inspected the property; that defendants made no representations as to ingress or egress to and from the station or motel.

The court heard the evidence and after viewing the premises found generally in favor of plaintiffs as alleged in their complaint, and that by reason of these facts it found that defendants deceived and took an unconscionable advantage of plaintiffs. It then found that at the time plaintiffs inspected the property the Highway Department was engaged in constructing a limited access freeway in front of it and that defendants made no representations in respect to ingress or egress, and found that ingress or egress was, at all times, open and free and that the normal flow of traffic thereon or access to the leased premises was not curtailed by reason of work upon the highway. Judgment was entered for rescission of the lease and the return of the $1,000 paid by plaintiffs.

The only question on appeal is the sufficiency of the evidence to support these findings and the judgment.

We will first consider the claimed false representation and the allegation of the amendment to the complaint in reference to the fact (a) that plaintiffs "could keep the motel rented

all the time.'' It is a general rule, which is subject to qualifications, that a representation, to constitute fraud, must relate to a past or existing fact, and not to the future (37 C.J.S. p. 222, § 6.) It is clear that any representation claimed to have been made in respect to item (a), as alleged, does pertain to the future. The only question is whether such claimed representation, when considered in connection with the allegations in the amended complaint and the surrounding circumstances, comes within any of the exceptions allowable. As a general rule the expression of an opinion cannot constitute fraud. However, this is not a hard and fast rule. In order that there be actionable fraud, the representation must relate to a matter of fact. Whether a given representation is an expression of opinion or a statement of fact depends on the circumstances of the particular case. The mere form of the statement or representation, as one of opinion or fact, is not in itself conclusive; so its form as an expression of opinion is no defense if it was intended and accepted as a statement of fact, as where an expression of opinion is blended with statements of fact or contains within it the assertion of a fact, where the opinion is professedly based on facts known by the speaker to be nonexistent, where it amounts to an implied assertion that the speaker knows facts justifying the opinion, or where an opinion is given as to a matter which to the knowledge of the speaker has ceased to be a mere matter of opinion, or as to which he has knowledge of facts, not warranting the opinion; and a statement which might otherwise be only an opinion, but is offered as an assertion of fact, so that the other party may reasonably treat it as such, will support an action. In order to justify a finding that a representation was one of fact as distinguished from opinion it must appear that the matter referred to is within the range of definite knowledge and does not necessarily rest on belief and conjecture. (37 C.J.S. p. 229, § 10.)

The evidence bearing on this question may be thus summarized. Mr. Daniels testified that defendants told him ''they had the motels rented, and he had them rented to the time, and at that time they were about all filled up''; that oil people were drilling for oil near by, and it just so happened that many of these oil people were living there. These oil people moved out the first week plaintiffs took over the properties. He then stated his wife had most of the dealings in reference to the cabins in the court. She testified that defendant Mr. Oldenburg told them that ''We could have them

rented all the time''; that the ones (three or four) with kitchens rented for $15 per week or $60 per month, and the sleeping units rented at $8 or $12 per week and that plaintiffs could set their own price if they rented them. Nightly rates were quoted at $3 or $4 or $6.

Mrs. Daniels admitted she went through some vacant units and that defendants adjusted with plaintiffs the weekly rentals that had been paid in advance by the oil people who were then occupying the kitchen unit rentals. She stated that she had no calls for rentals during the 10 days they were there and took in no money from that source.

Another witness testified that defendant Mr. Oldenburg said ''he had all the motels rented and that we could keep them rented all the time''; that he had the ones with kitchens rented for $15 per week; and that they saw which units were empty and which ones were occupied that day.

Defendant Oldenburg testified, in this respect, that he did give plaintiffs the price he charged for the units; that he had been getting these prices and that plaintiffs could rent the property for the same price ''as long as the people would stay there''; that he never gave them any estimate as to what the return was or would be from them and never mentioned anything to them about their being able to rent them all the time.

During the trial plaintiffs offered into evidence a portion of Oldenburgs' complaint in another action instituted by them against certain previous owners of the same property, wherein plaintiffs therein claimed that those defendants defrauded the Oldenburgs in a trade transaction by representing to them that prior to September 7, 1948, the income from the motel here involved averaged in excess of $400 per month when in truth and in fact, as those defendants well knew, said income averaged less than $100 per month.

Defendants endeavored to account for this claim by reason of the fact that the court was then all single units; that since then they made kitchens of some of the adjoining rooms and greatly improved them, and accordingly the rental demand was increased.

The mere statement, standing alone, that plaintiffs ''could keep the courts rented all the time,'' might well appear to be a mere expression of opinion, but when coupled with the additional representation reflected by the testimony, that defendants had ''all the motels rented,'' might well indicate that defendants, up to that time, were renting these cabins

nightly to full capacity, at the prices indicated, and accordingly, there would be no reason why plaintiffs would not be able to do the same. The fact that plaintiffs saw some rooms vacant in the daytime would not necessarily put them on notice that they would not be occupied at night. The court might well believe, from the evidence produced, that defendants had not been and were not renting the units to capacity at that time. The knowledge of this fact was only known to defendants and was not within the knowledge of the plaintiffs. Although a contrary finding might have been supported by the evidence, it cannot be said that the trial court lacked sufficient evidence in finding and concluding that the representations were "made not as a matter of opinion but as a fact"; that they were false, and that plaintiffs were deceived thereby; and but for said false representations plaintiffs would not have signed or entered into said lease.

We have carefully analyzed the remaining claims of false representations. After reviewing the evidence in reference thereto we are not particularly impressed with the merit of them. However, a single material misrepresentation is sufficient. (*Beeman* v. *Richardson,* 185 Cal. 280 [196 P. 774]; 37 C.J.S. p. 223, § 7.)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied December 19, 1950.