[Civ. No. 5098.   Fourth Dist.   Feb. 28, 1956.]

WILLIAM OLDENBURG et al., Respondents, v. LOUIS BRODY et al., Appellants.

Rimel & Johnston and James E. Walker for Appellants.

Harry Ashton and Donald D. Harwood for Respondents.

GRIFFIN, J.—This is an action for claimed damages in the exchange of properties. In September, 1948, plaintiffs, cross-defendants and respondents William Oldenburg and Etta Oldenburg, his wife, and defendants, cross-complainants and appellants Louis Brody and Theora E. Brody, his wife,

made an exchange of property through defendant, appellant and cross-complainant Burrow Escrow Company, a corporation. Two years later plaintiffs filed an action against defendants, and by their complaint alleged as a first cause of action that plaintiffs were the owners of an orange grove near Olive, and defendants Brody were the owners of a motel, café and gas station on the main highway in Santa Ana Canyon; that on September 22, 1948, they signed a written agreement of exchange (Exhibit A attached to the complaint) ; that defendant escrow company drew up this agreement at the request of the respective parties and that it constituted the escrow instructions in reference to the transaction; that by its terms defendants Brody agreed to convey to plaintiffs their property and to furnish a policy of title insurance showing title to be free and clear of liens, incumbrances or other matters, except as therein specified; and plaintiffs agreed to convey their property and furnish a similar policy of title insurance. Plaintiffs therein agreed to pay into escrow $3,-685.04 for the benefit of defendants Brody. Defendants Morris Levin and his wife, L. Ruth Levin, and Lee Staton, a copartnership, acted as real estate agents for both parties. Plaintiffs agreed to execute a promissory note to L. Ruth Levin in the sum of $1,000, as a part of the commission. It is alleged that plaintiffs performed their part of the agreement but defendants Brody did not comply with the terms of their agreement in that they failed to convey to plaintiffs their property "free and clear of liens, or incumbrances or other matters."

It appears from the evidence that the Brodys had theretofore, on February 25, 1948, deeded to the State of California for highway purposes, a small triangular strip of their property fronting on the old highway, which deed also contained the additional provision that the Brodys released and relinquished to the state all abutter's rights of access to and from the public highway adjoining said land, for freeway purposes and waived any right to damages by reason of a central dividing strip, or any damages to grantor's remaining property. This deed and a deed containing the description of the entire Brody property, together with the description of the Oldenburg property, were presented to the escrow officer in the presence of the real estate agent and Mrs. Brody. Apparently, in preparing the written agreement of exchange, the escrow officer's agent overlooked the excepted portion

deeded to the state by the Brodys and described the whole property as indicated by Brodys' deed, and the parties signed the agreement of exchange as thus written. There is no question about all parties knowing that the portion of the property deeded to the state was not to be included in the description of Brodys' property, and it was so found at the trial. The written agreement contained a provision that the Brody property was to be conveyed subject to the "following incumbrances," among others: "Any rights of way for existing roads, ditches, pipe lines and flumes, easements, reservations and restrictions characteristic of other lands in the same locality." The main contention is that plaintiffs had no knowledge that the Brodys had also "relinquished and released" to the state all abutter's rights as indicated in the deed, and that plaintiffs were defrauded in this respect, because the state subsequently and after the exchange was effected, constructed a drainage ditch, fenced the freeway in front of the Brody property, limited the access thereto by a 30-foot opening about 100 feet east of the gas station and a 30-foot opening about 310 feet west of the other opening, and changed the grade of the highway to a considerable extent.

Plaintiffs allege in their complaint as a first cause of action that the Brodys and the defendant escrow company did not comply with the written agreement, in that they failed to deed all of the Brody property described in the exchange agreement; that they excepted the strip previously deeded to the state, and that the escrow company, in violation of its duties under the agreement and without plaintiffs' knowledge or consent, caused the deed, with the exception, to be recorded and delivered to plaintiffs on October 15, 1948; that these defendants did not procure for plaintiffs a policy of title insurance as provided by the written agreement; that they did not secure a policy of title insurance until October 22, 1948, several days after the deeds were recorded; and that said policy did not insure title to the land as described in the written agreement of exchange, but showed it was subject to a prior conveyance to the state of all abutter's rights of access to and from the public highway adjoining said land. Damages in the sum of $19,685.04 were claimed against defendants by reason of their claimed failure to perform the written agreement of exchange in accordance with its terms.

As a second cause of action plaintiffs allege that defendants

Brody and Levin, between September 7 and September 22, 1948, falsely and fraudulently induced plaintiffs to exchange their property for the Brody property by representing to them that the right of access to said highway was not and would not be limited, and that no fences or other obstruction would limit or restrict ingress or egress thereto, when in truth and in fact, as defendants well knew, the Brodys had released and conveyed to the state said abutter's rights of unlimited access, and that the State Highway Department plan proposed to erect a fence along the common boundary line of Brodys' remaining property and to excavate a 6-foot drainage ditch along said line so access would be limited accordingly.

During the trial plaintiffs moved to amend their complaint to show fraud by reason of concealment of fact, charging that the Brodys, knowing that the state was going to fence the highway and create a limited access to the Brody property, concealed that fact from plaintiffs. The trial judge denied the motion but found, in this respect, that defendants Brody "did not state, declare or represent to plaintiffs that the right of access to and from the highway in front of the Brody property would or would not be limited or restricted in any manner"; that on September 22, 1948, defendants Brody knew that the state highway adjoining the Brody property might be fenced; that neither defendants Brody nor defendant Levin nor anyone else then knew that in the future a ditch would be constructed in front of the Brody property.

The complaint also contains further allegations that these defendants specifically and generally misrepresented the rental income from and incumbrance payments on the property. Since the trial court found against these last-mentioned allegations we will not give them further consideration.

Then follows a claim that plaintiffs would not have otherwise paid the Levins $1,250 in addition to the promissory note of $1,000. The prayer is that the note be canceled.

It is further alleged that the Burrow Escrow Company, in furtherance of the fraud, violated the escrow instructions as set forth in the first cause of action. A nonsuit was granted this particular defendant as to the second cause of action because no fraud on the part of that defendant was established.

It is then alleged that the property conveyed to defendants Brody by plaintiffs was of the value of $45,000, and that the property conveyed by Brodys to plaintiffs was less than $30,-000; that $3,685.04 had been paid by plaintiffs into escrow

for the benefit of defendants and accordingly plaintiffs were damaged in said sum by reason of such fraud and deceit.

It is then alleged that Morris Levin died and his wife was appointed administratrix of his estate; that a claim was presented against it for the amount set forth and that the claim was rejected.

Defendant Brody's answer denied generally the allegations of the complaint, alleged that their property was of the value of $45,000, that plaintiffs' property was of the value of less than $30,000, and as separate defenses alleged that when the escrow was opened a written agreement was entered into between the parties; that contemporaneously with its execution it was orally understood and agreed between them that the description of the Brody property furnished by them was that portion owned by them before the deeding of the strip to the state; that the deed giving the description of the excepted portion was also furnished at that time and that only the remainder was to be conveyed; and that plaintiffs received all the land which they were supposed to receive in exchange for their property. The trial court properly found that all parties knew that the highway strip was to be excluded from the deed.

It is then contended that by plaintiffs accepting, without objection, the deed from the Brodys, which contained the exception and the provision that title was "subject also to covenants, conditions, reservations, restrictions, easements and rights of way of record, if any," plaintiffs waived the right to insist upon a conveyance strictly in accordance with the terms of the written agreement. By way of cross-complaint the Levins set up the promissory note for $1,000 and asked for judgment thereon, plus attorneys' fees, etc.

The Burrow Escrow Company, by cross-complaint, claimed that the written exchange agreement was modified at the time by the agreement of the parties that the deed of the Brody property to plaintiffs should show the excepted portion deeded to the state, and claimed mutual mistake in reference to the written agreement. It asked that it be reformed accordingly. The request for reformation was denied and the court properly held that plaintiffs were not deceived in this respect. It then found, however, in respect to the first cause of action, that the defendant escrow company prepared the written exchange agreement; that the failure to note the relinquishment of abutter's rights therein was not the result of mutual mistake; that plaintiffs "have received by convey-

ance from defendants Brody all of the land which plaintiffs in fact agreed to purchase but have not received all of the *real property* which plaintiffs in fact agreed to purchase and defendants Brody agreed to convey in that the right of access had been conveyed to the State of California'' (italics ours); that the land conveyed was not free and clear of liens or incumbrances or other matters; that the agreement between the parties provided that the conveyance from defendants Brody to plaintiffs was to be subject to certain incumbrances, among which were ''Any rights of way for existing roads, ditches, pipe lines and flumes, easements, reservations and restrictions characteristic of other lands in the same locality''; and that it is true that defendant Burrow Escrow Company, in direct violation of its duties and obligations owing to plaintiffs, and without the knowledge or consent of the plaintiffs, caused said deed to plaintiffs to be recorded.

Defendants Brody, by a cross-complaint, alleged that plaintiffs and cross-defendants represented that their property was subject to a trust deed in the sum of $25,000 when in truth and fact there was $525 accumulated interest due thereon and unpaid and an unpaid irrigation district assessment in the sum of $358, and sought judgment for said sums. The trial court allowed judgment for $10,500 against both the Brodys and Burrow Escrow Company on the first cause of action based upon these findings, and allowed judgment only against the Brodys on the second cause of action. Certain facts relating to the leasing of the Brody property after plaintiffs took possession were considered by this court in *Daniels* v. *Oldenburg*, 100 Cal.App.2d 724 [224 P.2d 472].

As to the second cause of action the court further found that defendant Levin made no false representations to plaintiffs; that defendants Brody did not state, declare or represent to plaintiffs that the right of access to and from the highway in front of the Brody property would or would not be limited or restricted in any manner; that on September 22, 1948, defendants Brody knew that the state highway adjoining the Brody property might be fenced; that neither defendants Brody nor defendant Levin nor anyone else knew that in the future a ditch would be constructed in front of the Brody property; that the transaction between plaintiffs and defendants Brody was completed before a change in plans of the State Highway Department resulted in the construction of a ditch on the said right-of-way in front of the Brody property; that defendants Brody represented to plain-

tiffs that the road in front of the property would be closer to the buildings thereon and that traffic would be closer to the property after the State of California had constructed the freeway; that such representation was true in that the freeway, as then projected and subsequently constructed was closer to the buildings on said property, but was untrue in that the access of traffic to the property from the west was limited as described; that the representations made by defendants Brody were made for the purpose of inducing plaintiffs to exchange the real property described. It then specifically found that plaintiffs employed two brokers, one Fuller and Levin, as their agents and that each agent knew that Brodys had conveyed abutter's rights of access to the State but that this knowledge was obtained outside of the scope of their authority and therefore was not imputable to plaintiffs; that on August 30, 1948, plaintiff William Oldenburg executed and delivered to one Fuller, a duly licensed real estate broker, a written listing to sell or trade their property; that on September 3d Fuller went to the Brody property with the view of possibly arranging a trade for plaintiffs' property; that he examined it and part of the right-of-way map of the State of California showing lines of the right of access; that Fuller learned that abutter's rights of access had been conveyed to the state and that the line between the proposed freeway and the Brody property would probably be fenced area; that access to the freeway would be limited to points near the easterly and westerly boundaries thereof; that the information so obtained by Fuller with reference to abutter's rights of access and the fencing of the Brody property was not obtained by him within the scope of his employment or authority; that Fuller did not inform plaintiffs of the information so obtained by him, nor did he tell them anything relative thereto which he might otherwise have learned; that before the execution by plaintiffs and defendants of the written agreement of exchange, Mr. Levin learned that abutter's rights of access had been conveyed to the state and that the line between the proposed freeway and the Brody property would probably be fenced so that access to the freeway would be limited to points near the easterly and westerly boundaries thereof; that from September 7th until the close of the escrow Levin was acting as agent for plaintiffs and for defendants Brody in bringing about the exchange of the properties described, and that he was at all times a duly licensed real estate broker but had no

written contract of employment; that the knowledge obtained by Levin with reference to abutter's rights of access and the fencing of the property was not obtained by him within the scope of his employment or authority and that Levin did not inform plaintiffs of the information so obtained by him, nor did he tell them anything relative thereto which he might otherwise have learned.

It then found that, except for plaintiffs' belief in and reliance upon the representations of the defendants Brody, the plaintiffs would not have paid into said escrow the sums mentioned, and would not have authorized the payment of $1,250 to the Levins and would not have executed and delivered a promissory note for $1,000 and would not have conveyed the property to the Brodys. It then concluded that plaintiffs were entitled to $10,500 on the second cause of action and that L. Ruth Levin should have judgment on her cross-complaint against the Oldenburgs for $1,000 principal and attorneys' fees on the note. Judgment was entered accordingly.

At the close of the trial, defendants moved that plaintiffs be required to elect as to whether they were submitting their case on the first or second cause of action. The motion was properly denied.

Defendants have lodged in this court a written opinion of the trial judge which they contend conclusively shows that the trial court adopted the wrong measure of damages, ignoring the value of the personal property in the transaction; and that he had forgotten some of the testimony and erroneously construed the agreement of the parties.

Defendants contend on appeal that the trial court erred when it considered evidence of concealment not pleaded in the complaint and when it found fraud based on that evidence, i.e., when defendants made the claimed statement that the road in front of the property would be closer to the buildings thereon and that traffic would be closer to this property after the state had constructed the highway, although true, defendants concealed the known fact that a fence was to be erected between the highway and this property and ingress and egress would only be available at the points above mentioned, citing such authority as *Borneman* v. *Salinas Title Guar. Co.*, 66 Cal.App.2d 500, 504 [152 P.2d 649]; *Frace* v. *Long Beach City High Sch. Dist.*, 58 Cal. App.2d 566 [137 P.2d 60]; and *Mayer* v. *Beondo*, 83 Cal. App.2d 665 [189 P.2d 327, 190 P.2d 23].

The complaint alleges generally that at various time defendants fraudulently represented that the reconstruction of the highway would increase the business potential of said property and the rental value thereof, when in fact defendants had conveyed the abutter's rights of access to the state, and access would or could be limited accordingly. The pleadings of plaintiffs and defendants sufficiently embrace the issue of fraud by concealment, as found by the court. (*Alonso* v. *Hills*, 95 Cal.App.2d 778, 782 [214 P.2d 50].) ██ The matter of pleading becomes unimportant when a case is fairly tried upon the merits and under circumstances which indicate that nothing in the pleadings misleads the unsuccessful litigant to his injury, and where an answer in an action has been filed the court may grant plaintiff any relief consistent with the case made by the complaint and embraced within the issues. (Code Civ. Proc., §§ 475 and 580; *Buxbom* v. *Smith*, 23 Cal.2d 535, 542 [145 P.2d 305].)

The real question presented in this connection and the most serious one is whether, under the facts presented, plaintiffs also had, or should have had, knowledge of the fact that the access rights had been relinquished by the Brodys to the state at the time, and that the State Highway Department could or would construct a freeway in front of the Brody property with the limited access indicated.

The Oldenburgs testified they knew that the strip has been deeded to the state for highway purposes but disclaimed any knowledge on their part that the Brodys had relinquished the access rights to it and believed, from defendants' representations, that the road and traffic thereon would be closer to their place of business, unimpaired by a fence or drainage ditch. It is clear that none of the parties knew of the contemplated construction of the ditch at the time of the exchange, but by the relinquishment of the rights indicated in the deed to the state by the Brodys, at least the Brodys must have known, at the time, of the right of the state to subsequently erect the fence and construct the drainage ditch. This deed and relinquishment had been duly recorded prior to this time and was constructive notice of its contents. (Civ. Code, §§ 1213-1215.) Section 19 of the Civil Code provides that every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have

learned such fact. (See also *Furst* v. *Scharer,* 119 Cal.App. 2d 605, 607 [260 P.2d 198].)

There is testimony that when the Brodys and Mrs. Oldenburg entered into the escrow agreement, the deed to the state containing the relinquishment, etc., was given to the escrow agent and was "passed between the parties." Mrs. Oldenburg denied this and claimed she never saw it and had no knowledge of its presence in the escrow files. It is defendants' contention that since the escrow company was the agent for both parties, knowledge of the escrow agent of the agreement and the documents on file therein, was knowledge of the parties to the transaction, citing *Thompson* v. *Stoakes,* 46 Cal. App.2d 285 [115 P.2d 830] ; and *Ryder* v. *Young,* 9 Cal.App. 2d 545 [50 P.2d 495].

There is evidence that on August 30, 1948, Fuller originally was an authorized agent of plaintiffs to effect a sale or trade of their property, and did, on September 3, 1948, make an investigation and found that the state was authorized and did intend to erect a fence in front of the property, but plaintiffs claim that he did not communicate that information to them. Apparently, the agent Levin, on September 7, 1948, became agent for both parties and Fuller was not thereafter consulted as to the transaction although Levin was later compelled to pay a portion of the commission to Fuller. Levin, on September 5, 1948, made some previous investigation as to these rights and the intentions of the State Highway Department in respect to these claimed rights of the state and there was sufficient evidence to show that he knew that the state had these rights and intended to exercise them at some time in the future. There is no showing that he actually communicated this information to the Brodys or to the plaintiffs prior to the exchange although it may well have been inferred that the Brodys had obtained such knowledge. In this connection defendants contend that the court's finding that this knowledge of the agents was not obtained by them within the scope of their employment and authority is contrary to the facts and the law, citing section 2332, Civil Code; 2 Mechem on Agency, 2d edition, page 1387, section 1804; *Warren* v. *Dixon,* 74 N.H. 355 [68 A. 193] ; *Donald* v. *Beals,* 57 Cal. 399; and *Sullivan* v. *Helbing,* 66 Cal.App. 478 [226 P. 803]. The evidence might support such a finding as to the agent Fuller. It is problematical whether it would support such a finding as to the agent Levin. It was found that he

became the duly authorized agent of plaintiffs two days after he obtained such information. It appears to us that during these negotiations he was duty bound to disclose these facts to his principal and his failure to do so would constitute fraud on his part. However, on account of the time element there is some support for the finding of the court that he was not acting within the scope of his authority at the time he made the investigation. ▮ Since the evidence does not affirmatively show that Levin was authorized or instructed on behalf of the plaintiffs to ascertain the state of the title, or whether the abutter's rights had been completely relinquished and a fence was to be erected, information obtained by him is not necessarily imputable to the principal. (*Gordon v. Beck,* 196 Cal. 768 [239 P. 309] ; *Primm v. Joyce,* 87 Cal. App.2d 288, 291 [196 P.2d 829] ; *Pomona Mutual etc. Assn. v. Smith,* 18 Cal.App.2d 509, 515 [64 P.2d 444].)

The court thereafter did make a finding that the agent Levin "made no false representations." This finding is opposed to the finding that defendants Brody did make false representations. The representations relied upon by plaintiffs to establish the claimed fraud were made first by Levin to plaintiffs respecting the highway being closer to the place of business, and later by the Brodys in the presence of Levin. Since the court found that Levin knew the truth of these facts at the time and did not disclose them to his principal, the Oldenburgs, the finding of fraud, only on the part of the Brodys, is incongruous. It should be here noted that the trial judge, in his original findings, did find that both Levin and the Brodys were guilty of making the false representations charged to the Brodys. Then, in substituted findings, for some unknown reason, it was found that Levin was not guilty of any fraudulent representations.

Whether the agent Levin was guilty or not guilty of fraud in the transaction becomes important, for under the evidence and findings, if Levin was not guilty of making fraudulent representations, then the Brodys were not guilty either.

Since the court found that defendants Brody did not state, declare or represent to plaintiffs that the right of access to and from the highway in front of the Brody property would or would not be limited or restricted in any manner, the actual fraud of the Brodys, if any, must be predicated on the fact, found by the court, that they knew that the state right of way adjoining the Brody property might be fenced. Defendant Levin also knew of this fact. Had the trial court

found that both the agent and the defendants were guilty of fraudulent representations the finding might be supported. Under section 1572 of the Civil Code actual fraud consists of ". . . 3. The suppression of that which is true, by one having knowledge or belief of the fact; . . ." ▪ Deceit may be negative as well as affirmative. It may consist in suppression of that which it is one's duty to declare, as well as in the declaration of that which is false. (*Barder* v. *McClung*, 93 Cal.App.2d 692, 697 [209 P.2d 808].)

Plaintiffs claim that the finding that Levin made no false representations was due to the fact that testimony on this point was excluded against the estate of Levin, under section 1880, subdivision 3, of the Code of Civil Procedure. The findings are not so limited. This finding is inconsistent with and would not support the conclusion that false representations or fraud of Levin was imputed to the Brodys as principals whereby plaintiffs were induced to part with their property.

It was testified, in the instant case, that the deed to the state was presented to the escrow agent and was passed around among the parties at the time of the signing of the exchange agreement. Plaintiffs testified otherwise and the court found that a "true copy" of the deed was deposited with the escrow agent "on the ——— day of September, 1948, and during the course of the escrow," and that all parties knew that the Brodys had conveyed the land to the state, but plaintiffs did not know that the deed contained a relinquishment of any and all abutter's rights of access appurtenant to the remaining property. It then specifically found that the failure to note the other exception in reference to the relinquishment of abutter's rights in the written agreement was not the result of mutual mistake, and accordingly plaintiffs did not receive *all the real property* which the Brodys agreed to convey. It therefore became important to know when the deed to the state was placed with the escrow agent. The trial judge failed to insert the date and specific time when that was presented. If it was presented at the time and in the same escrow, then plaintiffs might well be chargeable with knowledge of its terms, since there was no finding of fraud as to the escrow agent or the Brodys in this respect.

▪ It is well settled law in California that the holder of an escrow is agent for all parties up to the time that the escrow is closed. (*Early* v. *Owens*, 109 Cal.App. 489, 494

[293 P. 136].) However, it was said in *Vigli* v. *Davis,* 79 Cal.App.2d 237, at page 256 [179 P.2d 586]:

"While that is the general rule, there are exceptions to it," and that "the general rule would not be applied where there were two escrows, 'to documents deposited in the escrow to which the party sought to be charged with notice was not a participant.'" It then quotes from *Thompson* v. *Stoakes,* 46 Cal.App.2d 285, 292 [115 P.2d 830], as follows: "'As a matter of substantive law, where a positive fraud has been perpetrated by one agent, appellants herein, such fraud does not become non-actionable because of the knowledge of another agent, the escrow holder, of facts not communicated to the common principal. As between two innocent parties, notice to the agent of one is notice to the principal, but, as between the principal and the fraudulent agent, notice of another agent should not be imputed to the principal.'"

Section 1213 of the Civil Code must be considered in conjunction with this transaction. It provides that "Every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees. . . ." (For exceptions thereto see *Seeger* v. *Odell,* 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]; 12 Cal. Jur. p. 764, § 38; *Highland Park Inv. Co.* v. *List,* 42 Cal. App. 752, 757 [184 P. 48]; *Ward* v. *Packard,* 18 Cal. 391, 393.) It does not appear from the evidence nor the findings that plaintiffs have brought themselves within the exceptions noted therein.

It is next argued that the trial court failed to fix the measure of damages as required by section 3343 of the Civil Code, designated in *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744 [192 P.2d 935], and referred to as the "out-of-pocket loss" rule which was substituted for the "loss-of-bargain" rule. The trial court did receive evidence as to the actual value of the respective properties, both real and personal, and the difference in such values was such as would support the judgment rendered. However, in fixing the claimed value of the Brody property, plaintiffs' expert witness Goode testified that in his opinion, on September 22, 1948, the Brody property was worth $38,000, with the triangular parcel of land and access rights, but only $27,500 without the triangle and without access rights, and that in his opinion the orange grove property was worth $40,000, a difference of $12,500.

He testified that he fixed the damage at $10,500, being the difference in value before the taking by the state and the value of it afterwards. ▮ In fixing this damage Goode included in his appraisal of such damage not only the whole triangular strip that had been deeded to the state, but also unsegregated and noncompensable factors. He testified that in determining the amount of the damage he did not base it solely upon the loss of access, as distinguished from other factors. One factor was increased speed of traffic, but he stated that there was no way he could convert that into dollars and cents; and that he also considered the change of grade in making his appraisal. It is apparent from the testimony of the witness that he was erroneously placing the valuation upon the entire property as it existed before the deed of the triangular strip to the state. The plaintiffs in this action knew of the building of the highway and knew that the triangular strip had been deeded to the state at the time they entered into the transaction. Accordingly, the true test would not be the value of the property in its entirety, including the triangular section, but as it existed at the time of the transaction.

Under section 3343 of the Civil Code, one defrauded in the purchase of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received. The market value may be considered in determining actual value. In determining this damage Goode also said he included the cost of moving the service station, garage and cafe, and fixed a set value of such cost. He admitted he did not consider the valuation of the personal property on the Brody holdings in fixing its value. A motion to strike his entire testimony was made, citing the dissenting opinion in *Rose* v. *State,* 19 Cal.2d 713, 715 [123 P.2d 505]; and *Holman* v. *State,* 97 Cal.App.2d 237, 241 [217 P.2d 448], in support of their claim. The motion was denied. It is true that defendants' witnesses gave a different estimate of the valuation of the respective properties. The trial court viewed the premises and heard independent evidence as to the value of the personal property involved, and fixed the damages at $10,500, the amount fixed by plaintiffs' witness Goode. ▮ The question of the qualifications of the witness Goode to testify in respect to the cost of removing the buildings, etc., was for the trial court to determine. (10 Cal.Jur. p. .963, § 220.) Had it not been for the written opinion of the

trial judge filed herewith, the amount of damage might be sustained under the holding of the majority opinion in *Rose* v. *State, supra*; and *Joint Highway Dist. No. 9* v. *Ocean Shore R. Co.*, 128 Cal.App. 743, 765 [18 P.2d 413]. He said:

"... my conclusion as to reasonableness is not based upon the fact that the highway was to be divided, but upon the construction of the fence and ditch, which actually caused the destruction of abutter's right of access ... I am ignoring the voluminous evidence bearing on leases and income from the business. ... In discussing the measure of damages, I feel that the personal property involved on either side of the transaction should be ignored. The escrow instructions and all of the arrangements between the parties seem to have ignored such personal property, and while evidence was received on the same, I feel that no allowance by the court should be made. As to the damages, I am adopting the testimony of Mr. Goode. It is true that his evidence was strenuously attacked in that he took into consideration as one of the factors to be considered in determining the value of loss of access, the element of the divided highway; nevertheless, that was merely an incident which does not militate against his basic opinion as to loss of access and the value thereof. I am therefore finding that plaintiffs have been damaged in the sum of $10,500.00."

From this statement it clearly appears that the trial judge eliminated all evidence concerning the value of personal property and to a great extent relied upon Goode's testimony in fixing the damage. Goode also eliminated the value of the personal property and considered the erection of the drainage ditch as a part of the damage. Apparently the trial judge did not fix the ultimate damage in accordance with section 3343 of the Civil Code. The personal property included within the Brody property consisted of the furnishings of many cottages, gas tanks, garage supplies, etc., totaling several hundreds of dollars. In comparison, the personal property involved in the plaintiffs' property was of much less value. It was definitely stated in the Bagdasarian case, *supra*, that the failure of the trial court to determine the value of the personal property and include it in computing the value of the property received constituted prejudicial error.

Since the second cause of action must be reversed as to the Brodys, we will next consider the first cause of action against them and the Burrow Escrow Company. The findings are that the escrow company prepared the written

agreement of exchange which constituted the escrow instructions; that the parties signed it and that it erroneously and by mistake failed to include the excepted strip and relinquishment of abutter's rights in the description of the Brody property; that the parties understood the Brodys had conveyed the strip to the state and could not convey it to plaintiffs, but did not know that such conveyance included a relinquishment of any and all abutter's rights of access appurtenant to the remaining property, and such failure to note the other exception in reference to the relinquishment of abutter's rights in the written agreement of exchange constituted a negligent act for which these defendants were liable. The theory upon which this liability is bottomed is reflected in the trial judge's written opinion, where it is said:

"The deed prepared by the defendant Burrow Escrow Company, signed by Brody and recorded by Burrow Escrow Company, correctly excepted the strip of land conveyed to the State, but did not except the abutter's right of access which had been earlier relinquished to the State of California. It was, in my opinion, obligatory upon the defendants Brody and Burrow Escrow Company to give a deed correctly describing all that the plaintiffs were to receive, whereas, in truth and in fact, it purported to and did convey to plaintiffs certain property which was not truly available. Stated more clearly, the deed failed to except the abutter's right of access, which, in this case, was of the greatest importance to the grantees and the loss of which has resulted in substantial damage."

By the agreement of exchange, as construed by the trial court, Brody and the parties hereto agreed to exchange his property subject "to the following incumbrances", among other things: "Any rights of way for existing roads, ditches, pipe lines and flumes, easements, reservations and restrictions characteristic of other lands in the same locality." It is apparent that at the time of this exchange there was a recorded right of way for the freeway that was then being built, including the right to dig ditches and build a fence along said easements, and that these restrictions were characteristic in other lands in the same locality. It is apparent that the agreement of exchange made a general reference to the restrictions involving this property. The deed of conveyance to plaintiffs likewise conveyed the Brody property in its entirely, less the triangular strip previously deeded

to the state, and sufficiently recited that such property was being conveyed to plaintiffs subject to "covenants, conditions, reservations, restrictions, easements and rights of way of record, if any." It is apparent from the recorded deed to the state that the covenants, conditions, reservations, restrictions, easements, and rights of way were set forth therein. A certificate of title which was received by plaintiffs sometime later recites that the liens and incumbrances to which said title is subject include "Any and all abutter's rights of access, appurtenant to said land as released and relinquished to the State of California by deed recorded February 25th, 1948 in book 1621, page 447, Official Records." It appears to us that the reasons set forth in the written opinion of the judge, when construed in connection with the evidence and findings would not adequately support a judgment against the escrow company or the Brodys on the first cause of action.

Judgment against appellants reversed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied March 27, 1956, and respondents' petition for a hearing by the Supreme Court was denied April 25, 1956. Carter, J., was of the opinion that the petition should be granted.